**VAL DECKER PACKING CO., Plaintiff-Appellant, v. TREON, Defendant-Appellee.**

Ohio Appeals, Second District, Miami County.

No. 451.   Decided November 18, 1950.

Estabrook, Finn & McKee, Dayton, for plaintiff-appellant.
Shipman & Shipman, Troy, for defendant-appellee.

## OPINION

By THE COURT:

This is an appeal on law from a judgment rendered in favor of defendant-appellee by the Common Pleas Court of Miami County.

Plaintiff-appellant instituted an action for a declaratory judgment wherein it alleges that it was the owner of a farm in Miami County which the defendant operated for the plaintiff from 1942 to 1948 under an oral agreement whereby each was to receive fifty per cent of the profit; that from time to time accountings had been made and profits equally divided; that defendant failed to properly account for certain dairy operations. Plaintiff further alleges that some time prior to September 16, 1946, plaintiff and defendant orally agreed to undertake the feeding of 270 western feeder steers on said farm, the plaintiff to purchase and pay for the same, the defendant to receive as added compensation for the care of said cattle the sum of $20.00 per day; that the cattle were purchased by the plaintiff and delivered to said farm; that said cattle were retained on the farm for 30 days, after which 266 steers were delivered to and slaughtered in the packing plant operated by the plaintiff. The 4 steers remaining were kept on the farm and subsequently sold and the proceeds accounted for. Plaintiff further alleges that defendant claims fifty per cent of the alleged profit realized on the 266 steers; that plaintiff tendered a check to the defendant for $793.13 covering the agreed sum of $20.00 per day for a 30-day period, and $193.13 for the cost of feed furnished from defendant's stock; that defendant accepted, retained and later cashed the check which was tendered in full satisfaction of any and all claims of defendant arising out of said transaction. Plaintiff prays for a declaratory judgment with respect to the rights, duties and liabilities of the parties arising out of said oral agreement.

To plaintiff's petition defendant filed an answer and cross-petition in which the defendant admits certain allegations in plaintiff's petition but denies that there is anything due from defendant to the plaintiff under the regular partnership agreement for the operation of the farm; then follows a general denial. The defendant as a second defense, and by way of cross-petition, alleges that the plaintiff and defendant entered into an oral agreement with respect to the 270 steers, which provided that after said steers were sold all costs of purchase and feeding and other expenses in connection therewith should be deducted and the profits should be equally divided between plaintiff and defendant; that it was further agreed that in the event no profit was realized the plaintiff was to pay the defendant $20.00 per day for his care of the cattle. Defendant further alleges he cared for said cattle for a period of thirty days and at the end of said period the cattle were taken from the farm and slaughtered by plaintiff

company. Defendant alleges that he received plaintiff's check in the amount of $793.13 and was advised by the officers of plaintiff company that the check covered the defendant's compensation at the rate of $20.00 per day; that he was further advised by the plaintiff, through its officers, that there was no profit realized on the transaction involving the 266 steers; that on or about January 15, 1947, he was advised by the officials of the plaintiff company that unless he cashed the check and accepted said payment he would receive nothing for his work and that said officers reiterated that said cattle were sold at a loss and that by reason of such fraudulent representation he was induced to cash the check.

Plaintiff further alleges that subsequently he learned that a profit had been realized on the transaction involving the 266 steers slaughtered by plaintiff company; that one-half of said profit amounted to $7,644.94, and that after deducting therefrom the amount of the check ($793.13) there was due defendant from the plaintiff the sum of $6,851.71 with interest at six per cent from October 19, 1946.

To the defendant's cross-petition the plaintiff filed an answer consisting of three defenses. In the first defense plaintiff admits certain allegations in the cross-petition and reiterates its claim that defendant was to be compensated for his work in caring for the steers at the rate of $20.00 per day; and then follows a general denial. In its second defense plaintiff alleges that no profits were realized on said transaction. For its third defense plaintiff alleges that defendant received $793.13 in full satisfaction of any obligations due the defendant by reason of said transaction. Plaintiff further alleges that on January 14, 1947 the regular partnership operation of the farm was accounted for and settled; that on July 23, 1947 another accounting and settlement was had between plaintiff and defendant involving the regular partnership operation of the farm, and again upon the termination of defendant's tenancy in March, 1948, a final accounting and settlement was had involving the regular partnership operation. To this answer of the plaintiff the defendant filed no reply.

It was stipulated and agreed by the parties to submit the issues to a jury. The jury rendered a verdict for the defendant for the amount prayed for. Plaintiff's motion for new trial was overruled and judgment entered on the verdict.

The first error assigned is that the court erred in overruling plaintiff's motion for a directed verdict at the close of defendant's case. Plaintiff contends that since the defendant did not file a reply to plaintiff's answer to the defendant's cross-petition, the allegations of plaintiff in its answer

respecting the accountings and settlements arrived at between plaintiff and the defendant on January 14, 1947, July 23, 1947 and in March, 1948, respecting the regular partnership operation of the farm, were not controverted and therefore, must be taken as true; that said settlements operated as full settlements for all obligations. In our opinion the accountings and settlements involving the regular partnership operation of the farm did not encompass and were not intended to include obligations or rights of the parties arising out of the oral agreement involving the 266 steers.

Plaintiff contends that defendant's acceptance and cashing of the check dated December 14, 1946 constituted an accord and satisfaction. Defendant admits he received $793.13 by check on the transaction. Accompanying the check was a letter signed by Walter O. Decker, Vice-President of plaintiff company, which the defendant received, the pertinent part being as follows:

"We are pleased to enclose our Check No. 3654 in the amount of $793.13, covering the feeding and handling of the 266 steers which were returned to our plant on October 18th and 19th, 1946.

"This check, as above, covers 75 bu. corn, etc. * * *. As per our agreement we are also allowing you $20.00 per day for 30 days feeding of these cattle, amount $600.00. Thus the total amount due you is $793.13, which we trust that you will find in order."

Plaintiff contends that the words "The total amount due you is $793.13" shows an intention on the part of plaintiff that the check was given in full satisfaction of defendant's claim on this transaction. The defendant offered evidence that before the check was cashed an officer of plaintiff company informed the defendant that if he did not accept and cash the check he would receive much less than the amount of the check. In Vol 34 A. L. R., page 1036, the controlling rule is stated as follows:

"By the great weight of authority the acceptance and use of a remittance by check, purporting to be 'in full,' or employing words of similar import, or accompanied by a letter to that effect, amount to an accord and satisfaction of the larger claim of the creditor, assuming that the claim was unliquidated or disputed, so that an express agreement to ac-

cept, and the actual acceptance of, the smaller amount in full satisfaction, would have been binding."

In **Vol. 1 O. Jur., page 164,** the text is as follows:

"But where there is a controversy existing between the parties regarding the amount due, the tender by the debtor of a check marked 'in settlement of account in full,' and the acceptance and use of it by the creditor, operates as an accord and satisfaction."

In support of the above text the case of **Bettman v. Sporkin, 6 Oh Ap 23,** is cited. See also Vol. 1 Am. Jur. page 223, Section 22; Vol. 1 C. J. S. page 523, Section 33; **Wellnitz v. Dependabilt Homes, 48 Abs 371,** 74 N. E. (2d) 776; **Platt v. Penetryn System, 151 Oh St 451,** 86 N. E. (2d) 600.

We are of the opinion that it may be reasonably implied from the words used in the letter and the statement by the officer of plaintiff company that the check was intended to be payment in full for the amount due the defendant and that the defendant was informed of plaintiff's intention.

However, the defendant claims that he was induced to accept the check by reason of the alleged fraudulent representation made by the officers of the plaintiff company to the effect that no profit had been realized on the transaction. The plaintiff contends that the defendant did not rely on such representations and, therefore, the defendant has not proven all of the elements of fraud. The defendant, in giving his reason for cashing the check, testified as follows:

"After I got that I had to make out my income tax and I knew that I had this much money coming, I knew the cattle made that much money—Plaintiff's objection overruled—and I knew that I had this much coming, I knew the cattle did not lose money, so I cashed the checks and had my tax made out."

It must be observed that under the oral agreement, as the plaintiff understood it, the plaintiff was to pay the defendant $20.00 per day for the care of the cattle, and under the agreement as alleged in the defendant's cross-petition he was to receive $$20.00 per day and, according to his testimony, he was to receive a reasonable sum for his work, if no profit was made. Under either version of the oral agreement the defendant was entitled to $20.00 per day or a reasonable sum for his work. This situation explains the statement of the

defendant to the effect that he knew he had that much money coming. The plaintiff claims that the defendant did not rely on such representations and points to the statement of the defendant to the effect that he knew the cattle did not lose money. The evidence is in conflict as to the weight and grade of the cattle and the market price at the time of slaughter. The defendant introduced evidence in support of the allegations in his cross-petition that the plaintiff company, through its officers, falsely represented that no profit had been made on the transaction. The defendant testified that one of the Deckers told him: "We didn't make any money. They didn't weigh any more than they did in Kansas," and "Bob, them cattle didn't make any money. We took them cattle in at 21c"; that one of the Deckers brought out to the farm company records to show the defendant that the company at the time of slaughter had purchased other cattle at 20c-22c and 23c per pound. The defendant had no knowledge of the truth or falsity of these representations. The president of the plaintiff company denied that he had told the defendant that the cattle lost money and testified: "In fact, I didn't know whether they lost money or made money, to tell the truth about it." In view of this statement, how can it be claimed the defendant did not rely on such representations? In determining whether the defendant relied on the representations of the plaintiff that no profit was made on the transaction, the statements made by the plaintiff and defendant must be considered in light of the method of doing business, as well as the conduct of the defendant before and after the check was cashed. For a period of years it was the practice for the plaintiff and defendant to make semi-annual settlements for the regular partnership operation of the farm. The plaintiff kept all the records and semi-annually would make up a written report of receipts and disbursements and send it, together with a check for the amount due, to the defendant. The defendant accepted the reports and checks and raised no question as to their accuracy. The defendant testified: "Because I trusted Bill Decker to be honest and faithful with me." The evidence shows that in July, 1947 the plaintiff notified the defendant to vacate the farm in March, 1948, which he did. This action was instituted in May, 1948. For a period of many months after the check was cashed the defendant accepted the situation and it was only after the elapse of six or seven months that he had his records examined by a friend and then made a claim. The statement of the defendant that he knew the cattle did not lose money may be regarded as an expression of an opinion and does not take from the jury the determination of the question as to whether the defendant relied on

the representations of the plaintiff. In view of the entire factual development we cannot say that reasonable minds could not differ on this matter. Whether or not fraud was proven, and whether defendant relied on the false representation, was a factual matter for determination by the jury. The facts in this case fall within the principle of law laid down in **Pope v. Mudge, 108 Oh St 192, 140 N. E. 501,** wherein it is held:

"it is error for the court to direct a verdict against the plaintiff, where, by giving to the evidence the most favorable interpretation toward him which any of the evidence will reasonably warrant, there is some evidence tending to support the allegations of the petition.

"If, in ruling upon a motion to direct a verdict, the court is required to detect the truth from conflicting evidence of the same or different witnesses, the motion should be overruled."

In the case of Pope v. Mudge the plaintiff, who was asking relief on the ground of fraud, had stated in a deposition that he did not believe the things that Mudge said about his attorney. The court in its opinion, on page 198, in discussing whether this statement of the plaintiff was sufficient to take the case from the jury on the question of non-reliance on the representations made, said:

"In his charge to the jury sustaining the motion and directing the verdict he quoted at considerable length from the deposition wherein Pope asserted that he did not believe the things that Mudge said about his attorney, and were there no other testimony in Pope's deposition than that quoted the action of the trial court in directing a verdict would not be disturbed by this court. * * * While he did categorically deny that he believed the statements, he also undertook to describe the effect of the statement upon his mind and his resultant conduct thereafter.

"In arriving, therefore, at the probable truth of the matters testified to by him, it requires the consideration of his physical and mental condition as disclosed by the deposition and other evidence, consideration of inconsistent and contradictory answers in connection with each other and other evidence, consideration of the conclusions of the witness in connection from which such conclusions were drawn, whether such facts warrant the conclusions, whether the conduct of the witness was consistent with the conclusion he declared, if not, whether the expressed conclusion is to be believed in preference to the

conduct, the succession of events, as detailed by the witness and other witnesses, in connection with the admitted fact that he had a verdict for the sum of $25,000. * * * In short, in detecting the truth of the matters testified to, it requires the exercise of the function of a trier of facts, whose privilege it is to believe testimony which he finds worthy of belief and to disbelieve testimony which he finds unworthy of belief. Such is the function of a jury."

In our opinion the trial court properly submitted to the jury the issue as to whether the defendant relied on the representations of the officers of the plaintiff company. All the other elements of fraud clearly appear. Since the jury returned a general verdict without interrogatories we may assume that this issue was resolved in favor of the defendant. On this issue, and all the determinative issues in the case, the evidence was in conflict. There is sufficient evidence on this issue to support the verdict of the jury.

Plaintiff contends the court erred in refusing to give two special instructions to the jury requested by the plaintiff. The special instructions submitted failed to include a finding by the jury on the issue of fraud. Since the instructions requested not only stated principles of law applicable to certain issues in the case, but also required the jury in the event it resolved certain issues in favor of the plaintiff to return a verdict for the plaintiff, it was defective in that it did not include a finding by the jury on the issue of fraud.

Plaintiff contends the court erred in overruling plaintiff's motion for new trial on the ground of misconduct of the jury. The motion for new trial was supported by affidavits to the effect that the jury deliberated twenty-one minutes before reaching a verdict. There is no statutory provision prescribing the length of time a jury shall deliberate before reaching a verdict. In Vol. 64 C. J., page 1019, Section 808, the rule is stated as follows:

"While the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, yet, where the law does not positively prescribe the length of time a jury shall consider their verdict, they may render a valid verdict without retiring, or on very brief deliberation after retiring, although the trial court may, in its discretion, cause the jury to reconsider the case if their decision is so hasty as to indicate a flippant disregard of their duties."

In **Vol. 39 O. Jur., page 1072, Section 342,** the Ohio rule is stated:

"The law does not prescribe any length of time that a jury shall remain out in the consideration of their verdict; this, according to the general rule, is a matter addressed to the discretion of the trial court."

Finding no error in the record prejudicial to the rights of the plaintiff the judgment is affirmed.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.

## ON APPLICATION FOR REHEARING

No. 451. Decided December 21, 1950.

By THE COURT:

This matter was submitted to the Court on application for rehearing. While the rules of Court do not now provide for filing such application, this Court will recognize such application and pass on any matter of merit which is raised. Motion of defendant-appellee to strike the application for re-hearing is overruled.

The only matter raised in the application which has not already been considered by the Court and reflected in its opinion is the line of testimony which appears on page 170 of the record where the defendant-appellee testified he had certain information which was not furnished by the Deckers. Plaintiff-appellant cites this line of testimony to show that defendant-appellee did not rely on statements made by the Deckers. However, the record clearly shows that the information which came to the defendant-appellee related to the price at which the beef was sold by the Decker Company to its dealers and had nothing to do with the market price of the beef on hoof.

The testimony does not show a definite and certain spread between the market price of the steers on the hoof and the price at which the packing company delivered beef to the dealers. Whether or not profit was made on the transaction was determined by the weight of the steers and the market price on the hoof at the time of slaughter. One of the elements that entered into the market price was the grade of the cattle at the time of slaughter. Whether the defendant-

appellee relied on the statements made by the Deckers was a factual matter to be determined by the jury.

Application denied.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.