Opinion
 

 BENKE, J.
 

 Plaintiffs and appellants William O. Vomaska and Sandra Vomaska appeal from a judgment in favor of defendant and respondent City of San Diego (City) arising from a jury verdict finding no dangerous condition on public property where Mr. Vomaska was seriously injured. Vomaska argues the judgment should be reversed because of the jury’s failure to deliberate, an evidentiary ruling precluding his presentation of a municipal code ordinance, an evidentiary ruling allowing City to present the results of a pedestrian survey and the denial of his motion for judgment notwithstanding the verdict.
 

 City cross-appeals, arguing the matter should never have gone to the jury but should have been decided as a matter of law, based, inter alia, on
 
 *908
 
 immunity under Government Code section 831.2 for natural conditions of unimproved public property.
 

 For reasons we will explain below, we affirm the judgment.
 

 Factual and Procedural Background
 

 Having traveled from Arizona with friends Mark and Stephanie Lee, the Vomaskas parked their recreational vehicle (RV) next to a sidewalk which bordered beach cliffs at La Jolla, California. Shortly after midnight, Mr. Vomaska suggested that he and Mr. Lee go down to the beach to put their feet in the ocean,
 
 [2]
 
 and Mr. Lee agreed. Mr. Vomaska had been drinking that evening. He had consumed an estimated 13 to 17 beers and had a blood-alcohol level of 0.13 at the time of his injury.
 
 [3]
 

 Standing outside on the sidewalk, Mr. Vomaska began removing his shoes and socks, while Mr. Lee entered the RV to turn off the compact disc player. When Mr. Lee came back outside about 30 to 45 seconds later, to his surprise, Mr. Vomaska was no longer there. Mr. Lee looked in both directions down the sidewalk and saw no sign of Mr. Vomaska. Mr. Lee looked down towards the water and could tell there was a plateau or ledge there; with some apprehension, he decided to try to go down to the ledge in order to get a better look below. He positioned himself with his weight backwards and stuck one foot out and slid down to the beginning of the plateau area. Mr. Lee looked over the edge of the plateau to the ocean below and saw Mr. Vomaska with his face down in the water. Mr. Lee sat down and slid down the rocks to the water and pulled Mr. Vomaska out of the water. Mr. Vomaska suffered serious brain damage as a result of the accident.
 

 In addressing whether the sidewalk area created a risk of misperception to a pedestrian, the Vomaskas’ safety expert testified to the following: The edge of the sidewalk, an asphalt walkway, was rough and rutted and could cause a person to lose footing. The shoulder area between the cliff edge and the sidewalk, consisting of eroded sandstone over which gunite had been placed for erosion control, was very narrow—less than a foot at its narrowest point. This narrow area gave no safety margin in the event of a misstep or misperception of the edge of the cliff. The gunite and the sand on the asphalt walkway were very much the same color, which made it very difficult to delineate an edge. The edge perception would be virtually nonexistent at
 
 *909
 
 night because of the lack of illumination, and the drop-off would not be readily apparent. In the expert’s opinion, a fence should have been erected in the area in order to prevent people from falling off the edge.
 

 Expert testimony was presented as to the steepness of the cliffs,
 
 [4]
 
 and the jury visited the cliffs to observe the area for themselves. Except for the 30-foot long stretch of sidewalk
 
 [5]
 
 where the accident occurred and one other narrow cliff area, the other cliffs in the vicinity were separated from the sidewalk by either fencing, planting materials or a wider buffer between the sidewalk and cliff.
 
 [6]
 
 The Vomaskas’ construction engineer expert testified that in the absence of a fence or guardrail, the standard of care in the industry required a curb and five-foot buffer zone between a sidewalk and a drop-off exceeding four inches.
 

 The jury returned a special verdict finding the public property was not in a dangerous condition at the time of the accident.
 

 Discussion
 

 I.
 
 Juror Misconduct
 

 To support a motion for a new trial, the Vomaskas submitted five juror declarations which set forth the following events. About 10 to 15 minutes after retiring to the jury deliberation room, the bailiff was informed a verdict had been reached. The exhibits had not yet been brought into the jury room. After the jury selected a foreperson, the foreperson suggested—in order to see where they stood—that everyone write their vote on separate pieces of paper as to the first question asking whether the public property was in a dangerous condition. After adding up the votes, the foreperson announced there were 10 “no” votes and 2 “yes” votes; he then said “[tjhat’s it”; and without further discussion, he filled out and signed the special verdict form. The jurors did not discuss their individual views before the special verdict form was filled out and signed.
 

 No counterdeclarations were submitted.
 

 In denying the motion for new trial, the trial court ruled there was no misconduct, noting that although perhaps in a perfect world people would
 
 *910
 
 like them to deliberate longer, there was no authority to support a claim of misconduct arising from their taking a “straw vote” and then making the straw vote the official one and rendering the verdict.
 
 [7]
 

 The Vomaskas argue the jury’s complete failure to discuss any evidence or issues deprived them of their constitutional right to trial by jury.
 

 Juror affidavits may be used to impeach a verdict if they refer to objectively ascertainable statements, conduct, conditions or events, but not subjective reasoning processes of jurors, which are likely to have influenced the verdict improperly.
 
 (Andrews
 
 v.
 
 County of Orange
 
 (1982) 130 Cal.App.3d 944, 953 [182 Cal.Rptr. 176]; Evid. Code, § 1150.) In reviewing an order denying a motion for new trial, as distinguished from an order granting a new trial, based on jury misconduct, we independently review the record to determine whether misconduct, if it occurred, prevented a fair trial.
 
 (Andrews
 
 v.
 
 County of Orange, supra,
 
 130 Cal.App.3d 944, 955;
 
 People
 
 v.
 
 Cumpian
 
 (1991) 1 Cal.App.4th 307, 311 [1 Cal.Rptr.2d 861].)
 

 “Trial by jury is an inviolate right and shall be secured to all.” (Cal. Const., art. I, § 16.) The right may not be abridged by an act of the Legislature, but the Legislature may establish reasonable regulations or conditions on the enjoyment of the right as long as the essential elements of trial by jury are preserved.
 
 (People
 
 v.
 
 Collins
 
 (1976) 17 Cal.3d 687, 692 [131 Cal.Rptr. 782, 552 P.2d 742].)
 

 Code of Civil Procedure section 613 states: “When the case is finally submitted to the jury,
 
 they may decide in Court
 
 or retire for deliberation.” (Italics added.) On its face, the statute—permitting the jury to decide the case in court—suggests there is nothing impermissible in simply taking a vote and rendering a verdict if the jury chooses to do so.
 

 We have found dicta in cases from other states with similar statutes to support this proposition. For example,
 
 State
 
 v.
 
 Richmond
 
 (1928) 321 Mo. 662 [12 S.W.2d 34], where the jury deliberated for one and one-half hours, the court stated: “The Legislature in its wisdom has seen fit in defining the powers of a jury to declare that ‘when the argument is concluded, the jury may either decide in court or retire for deliberation.’ [Citation]. This statute is but a recognition in other words of the unlimited authority of the jury
 
 to determine for themselves whether a deliberation is necessary to enable them to
 
 
 *911
 

 render a verdict.
 
 The time they may devote to such deliberation
 
 if the same is deemed necessary,
 
 is left wholly to their judgment.” (Italics added; see also Cal. Judges Benchbook, Civil Trials (1981) § 14.9, p. 439;
 
 [8]
 
 see generally,
 
 Bobst
 
 v.
 
 Hardisty
 
 (1939) 199 Wash. 304 [91 P.2d 567, 570];
 
 Ross
 
 v.
 
 State
 
 (1948) 153 Tex.Crim. 312 [220 S.W.2d 137, 142];
 
 Val Decker Packing Co.
 
 v.
 
 Treon
 
 (1950) 88 Ohio App. 479 [97 N.E.2d 696, 701];
 
 Patillo
 
 v.
 
 Thompson
 
 (1962) 106 Ga.App. 808 [128 S.E.2d 656, 662] [verdict may be reached without retiring from jury box, or with short deliberations]; see Annot., Effect on verdict in civil case of haste or shortness of time in which the jury reached it (1963) 91 A.L.R.2d 1220, 1230.)
 

 The BAJI instructions given here tell the jury to discuss the case,
 
 [9]
 
 and certainly this would be the preferred procedure so as to ensure the jury carefully considers the evidence and the possible varying interpretations thereof.
 
 [10]
 
 However, we are not persuaded that a party’s constitutional right to have his case decided by a jury includes the right to compel jurors to discuss issues which they have chosen to decide without discussion.
 
 [11]
 

 
 *912
 
 The jurors here took a straw vote to see how they each viewed the issue, and when that vote revealed 10 jurors were in agreement, they decided to render a verdict rather than discuss the issue further. This procedure is a type of “deliberations,” in that each juror—having considered the evidence and arguments independently—is setting forth his or her opinion, albeit without accompanying reasons or explanations. We note this is not a case where the jury does choose to discuss a case, in which situation each juror must have the opportunity to participate equally in all discussions in order to satisfy the constitutional right to trial by jury. (See
 
 Griesel
 
 v.
 
 Dart Industries, Inc.
 
 (1979) 23 Cal.3d 578, 584 [153 Cal.Rptr. 213, 591 P.2d 503];
 
 Vaughn
 
 v.
 
 Noor
 
 (1991) 233 Cal.App.3d 14, 21 [284 Cal.Rptr. 222] [when alternate juror is substituted into jury, it is not enough to merely tell jury to disregard earlier vote; jury must be told to begin deliberations anew].)
 

 The Vomaskas point out that the verdict was rendered before the exhibits, including photographs of the accident scene, were delivered to the jury room. However, the jury visited the scene of the accident themselves, and thus had ample opportunity to consider the import of the photographs. No argument is made that they did not have an opportunity to view any specific pertinent exhibit prior to retiring for deliberations. Nor is there any indication of any overt conduct or statements showing jurors failed to properly perform their duties to pay attention during trial and consider all the evidence presented or that any jurors were compelled to render a vote before they were ready to do so.
 
 [12]
 
 Indeed, the jurors were polled in open court as to their individual votes, and all answered without equivocation.
 

 Although we independently review the record upon the denial of a motion for new trial based on jury misconduct, we still give deference to the trial court’s discretionary determinations.
 
 (Andrews
 
 v.
 
 County of Orange, supra,
 
 130 Cal.App.3d at pp. 954-955;
 
 People
 
 v.
 
 Hill
 
 (1992) 3 Cal.App.4th 16, 40
 
 *913
 
 [4 Cal.Rptr.2d 258].) We agree with the statement in
 
 Val Decker Packing Co.
 
 v.
 
 Treon, supra,
 
 97 N.E.2d at page 701: ‘“While the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, yet, where the law does not positively prescribe the length of time a jury shall consider their verdict, they may render a valid verdict without retiring, or on very brief deliberation after retiring, although the trial court may, in its discretion, cause the jury to reconsider the case if their decision is so hasty as to indicate a flippant disregard of their duties.’ ” Here, the affidavits on their face do not show such flippancy, and the trial court apparently observed none.
 

 In sum, although we have no doubt the BAJI instructions are proper since the jury should be encouraged to discuss the case, we agree with the trial court that the affidavits here do not show conduct which rises to the level of misconduct depriving Vomaska of a fair trial.
 
 [13]
 

 II.-IV
 
 *
 

 Disposition
 

 The judgment is affirmed.
 
 [20]
 

 Kremer, P. J., and Nares, J., concurred.
 

 A petition for a rehearing was denied July 2, 1997, and the petition of plaintiffs and appellants for review by the Supreme Court was denied September 3, 1997.
 

 [2]
 

 To the north of the area where they were parked, there was a lifeguard station and steps leading down to the beach, and Mr. Lee assumed this was where they would access the beach.
 

 [3]
 

 By way of reference, it is unlawful to operate a motor vehicle with a blood-alcohol level of 0.08 percent by weight. (Veh. Code, § 23153.)
 

 [4]
 

 The first section of the cliff dropping off from the sidewalk was a 5-foot, 6-inch vertical drop and 5 feet wide with a 47.7-degree slope; below that, the next section of the cliff was another 4,/2-foot vertical drop and 10 feet wide with a 24.2-degree slope; and the last section of the cliff was a 5-foot drop and 20 feet wide with a 14-degree slope.
 

 [5]
 

 The thirty-foot stretch of sidewalk varied in width from five feet, six inches to six feet, six inches.
 

 [6]
 

 The plants defined the beginning of the slope, thus giving pedestrians a visual cue as to how far they could safely go.
 

 [7]
 

 The trial court also stated that if there was misconduct, there was no prejudice since there were no statements by jurors asking for time to discuss the case or indicating they might change their mind. The Vomaskas argue the trial court erroneously failed to apply a presumption of prejudice arising from juror misconduct. As we will explain below, since we find no misconduct, we do not reach the issue of prejudice.
 

 [8]
 

 The California Judges Benchbook,
 
 supra,
 
 at page 439, states that Code of Civil Procedure section 613 “does not expressly require that the jurors deliberate
 
 with each other,
 
 as opposed to silent deliberation, but it has been held that the trial court may properly advise them of their duty to hear and consider each other’s arguments. [Citation.]”
 

 [9]
 

 The jurors were told: “In the jury room it is your duty to discuss the case in order to reach an agreement if you can. [*]Q Each of you must decide the case for yourself, but should do so only after considering the views of each juror. HQ You should not hesitate to change an opinion if you are convinced it is wrong. However, you should not be influenced to decide any question in a particular way simply because a majority of the jurors, or any of thetn, favor such a decision.” (See BAJI No. 15.30.)
 

 Further, “The attitude and conduct of jurors at the beginning of their deliberations are very important. It is rarely helpful for a juror, on entering the jury room, to express an emphatic opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may be aroused, and one may hesitate to change a position even if shown that it is wrong. Remember that you are not partisans or advocates in this matter. You must be impartial judges of the facts.” (See BAJI No. 15.31.)
 

 [10]
 

 As stated by our Supreme Court, “Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member’s viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint.”
 
 (People
 
 v.
 
 Collins, supra,
 
 17 Cal.3d at p. 693.)
 

 [11]
 

 Although jurors are not supposed to form or express an opinion prior to the submission of the case to them (Code Civ. Proc., § 611;
 
 City of Pleasant Hill
 
 v.
 
 First Baptist Church
 
 (1969) 1 Cal.App.3d 384, 419 [82 Cal.Rptr. 1]), it is understood they will be considering the evidence independently during the course of the trial
 
 (Perdue
 
 v.
 
 Hopper Truck Lines
 
 (1963) 221 Cal.App.2d 604, 609 [34 Cal.Rptr. 640] [short jury deliberations do not show failure to fully consider case]).
 

 The jurors here did follow the instruction which told them to elect a foreperson, and if nine or more agree on an answer, they should return the special verdict. They were told: “You shall now retire and select one of your number to act as foreperson. Your foreperson shall preside over your deliberations. All jurors should participate in all deliberations and vote on each
 
 *912
 
 issue. Answer the questions according to the directions on the form and all the instructions of the court. If nine or more can agree on the answers, you shall return a special verdict in the form of written answers to questions on a form you will be given. ['¡O As soon as any nine or more jurors have agreed upon each answer, have the answers signed and dated by your foreperson and return with it to this room. . . . You may be polled in open court. If so, each juror must be able to state truthfully that the answer does or does not express his or her vote.” (See BAH No. 15.52.)
 

 [12]
 

 In
 
 Bobst
 
 v.
 
 Hardisty, supra,
 
 91 P.2d at page 570, the court noted that if at the close of the case the jurors were of unanimous opinion, there was no reason why they should prolong deliberations. Similarly, in
 
 Ross
 
 v.
 
 State, supra,
 
 220 S.W.2d at page 142, the court stated that if the first ballot showed the jurors were of one mind, there could be little hope that hours of discussion among the jurors would assist the appellant.
 

 Admittedly here, the jurors were not of a unanimous opinion, the vote being split 10 to 2. However, absent some overt conduct or statements showing jurors were pressured to close deliberations before they were ready, we see no misconduct.
 

 [13]
 

 Because we find no misconduct, we need not address the Vomaskas’ argument that the trial court erroneously failed to apply a presumption of prejudice arising from juror misconduct.
 

 *
 

 See footnote 1,
 
 ante,
 
 page 905.
 

 [20]
 

 In light of our findings, it is unnecessary to address City’s cross-appeal.