101 Cal.Rptr.2d 314 (2000)
84 Cal.App.4th 929
The PEOPLE, Plaintiff and Respondent,
v.
Joe Willie MORGAN, Defendant and Appellant.
No. C032328.
Court of Appeal, Third District.
November 9, 2000.
Review Granted March 14, 2001.
*315 Jerry Sies, under appointment of the Court of Appeal, Los Angeles, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Charles Fennessey, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SCOTLAND, P.J.
Defendant Joe Willie Morgan was convicted of selling cocaine to an undercover police officer (Health & Saf.Code, § 11352) and was committed to state prison. On appeal, he raises a number of contentions, including a claim that the trial court erred in instructing the jurors, pursuant to CALJIC No. 17.41.1, that they were obliged to advise the court if any juror refused to deliberate or expressed an intention to disregard the law or to decide the case based upon penalty or punishment or any other improper basis.
In the published portion of this opinion, we conclude that the trial court properly instructed with CALJIC No. 17.41.1. As we shall explain, we reject defendant's assertion that this instruction has a "chilling effect" upon jury deliberations, and find instead that it serves the important function of protecting the due process right of litigants to a fair trial and promoting the rule of law, which is the cornerstone of our legal system.
*316 In the unpublished portions of this opinion, we find no merit in defendant's remaining claims of error but conclude that, having imposed a $300 restitution fine pursuant to Penal Code section 1202.4, the trial court erred in failing to impose another restitution fine in the same amount, suspended unless parole is revoked, as required by Penal Code section 1202.45. Accordingly, we shall correct this omission and affirm the judgment as modified.

DISCUSSION

I[**]

II
The trial court's instructions to the jury included CALJIC No. 17.41.1, which states: "The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation."
In defendant's view, this instruction is improper because it "tends unduly to involve the court in the deliberative process" by inviting members of the jury to ask the trial court to intrude upon the secrecy of deliberations and delve into a juror's motivations. By doing so, defendant argues, the instruction has a "chilling effect" on deliberations because "a juror who would hold fast to an unpopular decision if he knew that he could not be hauled before the court to account for it, may nevertheless be unwilling to do so if he knows his fellow jurors are going to report him to the judge." We are not persuaded.
Among the elements of the right to trial by jury guaranteed by article I, section 16 of the California Constitution is the requirement that, after the case is finally submitted to them, the jurors must engage in deliberation before reaching a verdict. (People v. Collins (1976) 17 Cal.3d 687, 693, 131 Cal.Rptr. 782, 552 P.2d 742.) This does not mean the jurors are precluded from taking a vote before discussing the case. (Vomaska v. City of San Diego (1997) 55 Cal.App.4th 905, 910-912, 64 Cal.Rptr.2d 492.) Such a vote is a form of jury deliberation in that it constitutes the expression of jurors' opinions about the case, "albeit without accompanying reasons or explanations." (Id. at p. 912, 64 Cal.Rptr.2d 492.) This is so because to deliberate means "to ponder or think about with measured careful consideration and often [but not necessarily] with formal discussion before reaching a decision or conclusion." (Webster's 3d New Internat. Diet. (1986) p. 596.) Thus, if the jurors are able to decide the case on the first vote, they effectively have determined that further deliberation is unnecessary. (Vomaska v. City of San Diego, supra, at pp. 910-911, 64 Cal.Rptr.2d 492; Pen.Code, § 1128 ["After hearing the charge, the jury may either decide in court or may retire for deliberation. If they do not agree without retiring for deliberation, an officer must be sworn to keep them together for deliberation...."]; Code Civ.Proc., § 613 ["When the case is finally submitted to the jury, they may decide in court or retire for deliberation...."].) But if the jurors are unable to decide the case without discussing the issues, it is the duty of each juror to deliberate further. (Pen.Code, § 1128; People v. Collins, supra, at p. 693, 131 Cal.Rptr. 782, 552 P.2d 742; Vomaska v. City of San Diego, supra, at pp. 911-912, 64 Cal.Rptr.2d 492; see also Code Civ. Proc., § 612 ["Upon retiring for deliberation the jury may ...."], § 612.5 [similar language], § 614 [same]; Pen.Code, § 1093, subd. (f) [same], § 1137 [same], § 1138 [same].) "Deliberations provide the jury with the opportunity to review *317 the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint." (People v. Collins, supra, at p. 693, 131 Cal.Rptr. 782, 552 P.2d 742.)
Because jury deliberation is an element of the right to trial by jury, a juror's refusal to deliberate is misconduct amounting to the inability and failure to perform the juror's duty, for which he or she can be discharged. (Pen.Code, § 1089; Code Civ.Proc., § 233; People v. Thomas (1994) 26 Cal.App.4th 1328, 1333, 32 Cal.Rptr.2d 177.) So, too, is a juror's expression of intent to disregard the law. (People v. Collins, supra, 17 Cal.3d at p. 696, 131 Cal.Rptr. 782, 552 P.2d 742.) Likewise, the expression of an intent to decide the case based upon the penalty that could be imposed by the court is misconduct which constitutes a failure to perform the juror's duty and justifies his or her removal for cause. (People v. Shannon (1956) 147 Cal.App.2d 300, 306, 305 P.2d 101; cf. People v. Daniels (1991) 52 Cal.3d 815, 864, 277 Cal.Rptr. 122, 802 P.2d 906 ["a juror's serious and wilful misconduct is good cause to believe that the juror will not be able to perform his or her duty."].) Such is the case with other forms of juror misconduct. (E.g., People v. Daniels, supra, 52 Cal.3d at pp. 863-864, 277 Cal.Rptr. 122, 802 P.2d 906 [juror "discussed the case with outsiders"]; People v. Holloway (1990) 50 Cal.3d 1098, 1108, 1110-1112, 269 Cal.Rptr. 530, 790 P.2d 1327 [juror read newspaper accounts which "revealed information about defendant's prior criminal conduct that the court had ruled inadmissible because of its potential for prejudice"], disapproved on other ground in People v. Stansbury (1995) 9 Cal.4th 824, 830, fn. 1, 38 Cal.Rptr.2d 394, 889 P.2d 588.)
The evil of such juror misconduct is that it deprives a party of the cornerstone of our jury system, a decision made by neutral factfinders based solely upon the applicable law and the evidence admitted at trial. (United States v. Gorham (D.C.Cir.1975) 523 F.2d 1088, 1098 ["Of course a jury can render a verdict at odds with the evidence and the law in a given case, but it undermines the very basis of our legal system when it does so."].)
Not only is juror misconduct unfair to a party in the case, it has great potential to undermine public confidence in our entire system of justice. "The right to equal justice under law inures to the public as well as to individual parties to specific litigation, and that right is debased when juries at their caprice ignore the dictates of established precedent and procedure." (United States v. Gorham, supra, 523 F.2d at p. 1098.)
In an effort to prevent these evils, jurors properly are admonished among other things that: (1) they have a responsibility to deliberate as impartial judges of the facts (CALJIC Nos. 17.40, 17.41); (2) they must accept and follow the law as stated to them by the court, regardless of whether the jurors agree with the law (CALJIC Nos. 0.50, 1.00); (3) they must decide the case solely upon the evidence presented to them (CALJIC Nos. 0.50, 1.03) and, thus, may not independently investigate the facts or the law, or consider or discuss facts as to which there was no evidence (CALJIC Nos. 0.50, 1.03); (4) they must not discuss or consider the subject of penalty or punishment (CALJIC No. 17.42); (5) they must not be influenced by pity for, or prejudice against, the defendant or by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling (CALJIC Nos. 0.50, 1.00); (6) they are not partisans or advocates in the case but, instead, must be impartial judges of the facts (CALJIC No. 17.41); (7) both the defendant and the People have the right to expect that the jurors will conscientiously consider and weigh the evidence, apply the law, and reach a just result regardless of the consequences (CALJIC Nos. 0.50, 1.00); (8) the jurors must promptly report *318 to the court any incident within their knowledge involving an attempt by any person to improperly influence any member of the jury (CALJIC No. 0.50); and (9) they may address questions or requests to the court (CALJIC No. 17.43).
CALJIC No. 17.41.1 essentially is a summary of those instructions, restated in a way that makes it clear each juror has an obligation to inform the court if any other juror refuses to deliberate, expresses an intention to disregard the law, or expresses an intention to decide the case based on penalty or any other improper basis.
The sole authority cited by defendant in support of his assertion that CALJIC No. 17.41.1 "tends unduly to involve the court in the deliberative process," by inviting members of the jury to ask the trial court to intrude upon the secrecy of deliberations and delve into a juror's motivations, is U.S. v. Brown (D.C.Cir.1987) 823 F.2d 591. However, that case simply held a trial court may not dismiss a juror during deliberations in a criminal case when the court's inquiry into the reason for the request to discharge the juror discloses a possibility that the juror harbors doubts about the sufficiency of the government's evidence. (Id. at pp. 596, 597.)
CALJIC No. 17.41.1 does not address either the investigative process after the court is advised of the possibility of juror misconduct, or what must be shown in order for the trial court to discharge a juror for misconduct.[1] As we have just noted, the instruction simply reiterates some of the jurors' duties and informs the jurors that they should advise the court if they believe a fellow juror is engaging in misconductno more, no less. Such an instruction, in and of itself, does not intrude upon the secrecy of the deliberative process.
Nevertheless, defendant complains the instruction has a "chilling effect" on deliberations by making it less likely that a juror will "hold fast" to a decision disfavored by other jurors for fear that he or she will be reported to the judge. This Chicken Little argument ignores the tenacity of hold-out jurors demonstrated daily in California's trial courts when jurors disagree about the state of the evidence and adhere to the court's admonition that a juror should not "change an opinion" and "decide any question in a particular way [simply] because a majority of the jurors, or any of them, favor that decision." (CALJIC No. 17.40.)
Simply stated, we are unconvinced that CALJIC No. 17.41.1 operates in any way to coerce a juror to abandon his or her view of the evidence for fear of retaliation by a court which explicitly has instructed the jurors that (1) if the court had done or said anything seeming to indicate what the jury should find to be the facts, "you [the jurors] will disregard it and form your own conclusion" (CALJIC No. 17.30), (2) both the defendant and the People "are entitled to the individual opinion of each juror" (CALJIC No. 17.40), and (3) each juror must not decide any question in a certain way simply because a majority of the jurors favor that decision (CALJIC No. 17.40).
Some have complained, however, that CALJIC No. 17.41.1 discourages jurors from exercising the power of jury nullification. Our response is, "precisely and for good reason."
"Our legal system, indeed the social compact of a civilized society, is predicated upon respect for, and adherence to, the rule of law." (People v. Chong (1999) 76 Cal.App.4th 232, 243, 90 Cal.Rptr.2d 198.) In the words of former Presiding Justice Robert K. Puglia, the "rule of law has played a significant part in all that is good about America.... The rule of law is the great leveler. It is the destroyer of privilege and class distinctions.... It is the *319 guarantor of our freedoms. It emits the glow that is never so brilliant as when contrasted to the ominous shadows cast by brutal tyrannies.... More than anything else, the rule of law is at the heart of American exceptionalism."[2]
Jury nullification threatens the rule of law and "runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." (United States v. Dougherty (D.C.Cir.1972) 473 F.2d 1113, 1137.) "To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos. No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable. Toleration of such conduct would not be democratic, as [the proponents of jury nullification] claim, but inevitably anarchic." (Id. at pp. 1133-1134.) That is precisely why trial courts do not inform jurors of their power of jury nullification. (See People v. Dillon (1983) 34 Cal.3d 441, 487-188, fn. 39, 194 Cal.Rptr. 390, 668 P.2d 697.)
Of course, there are those who point to examples from the formative years of our nation and claim jury nullification is a "fundamental necessity of a democratic system" to serve as check against abuses of the executive power. (United States v. Moylan (4th Cir.1969) 417 F.2d 1002, 1005-1006; see United States v. Dougherty, supra, 473 F.2d at pp. 1130-1133; Pound, Law in Books and Law in Action (1910) 44 Amer.L.Rev. 12, 18.) This myopic claim overlooks gross abuses of the power of jury nullification that occurred within the last century when, despite strong evidence of guilt, juries in southern states acquitted persons accused of committing crimes against racial minorities. (Marder, The Myth of the Nullifying Jury (1999) 93 Nw.U. L.Rev. 877, 888-889.) Hence, "despite one proponent's assertion that jury nullification `arising from idealism is good for the American soul,' there is no guarantee that jurors who decide to nullify the law in fact will be acting out of idealism, rather than cynicism or maliciousness. For once jurors reject the guidance offered by law, they are free to use their power to reach a general verdict in any manner they choose. As a result, `defendants equally guilty of the same offense stand to receive widely disparate treatment for their acts.' This is one of the worst aspects of jury nullification, namely, `its further removing the administration of criminal justice from an ideal toward which it should be aspiring': equal justice under law." (Warshawsky, Opposing Jury Nullification: Law, Policy, and Prosecutorial Strategy (1996) 85 Geo. L.J. 191, 219-229, fns. & citations omitted.)
"[R]ather than being an expression of democracy, jury nullification is fundamentally antidemocratic." (Warshawsky, supra, 85 Geo. L.J. at p. 213.) Our state and nation have developed detailed systems of law governing the conduct of businesses and individuals in our society, with substantial procedural protections and effective means to change the law within the framework of the democratic process. When, in a criminal case for example, "a jury refuses to find a defendant guilty of violating a particular law, even though the facts presented at trial clearly indicate his guilt, it is saying, in effect, that it rejects the legislative policy choice embodied in the law. [But] [s]uch a policy choice is the product of a multitude of considerations, including concerns about the law's moral implications, its political feasibility, and the social and economic consequences it is expected to have." (Id. at p. 214.) Jury deliberation in a particular case is not an appropriate forum to reevaluate those policy judgments. (Id. at pp. 214-215.) "To the extent that nullifying juries attempt to respond to social conditions, they perform *320 other branches' functions, and these functions are not ones that the jury is particularly well suited to perform." (Marder, supra, 93 Nw.U.L.Rev. at p. 907; Warshawsky, supra, 85 Geo. L.J. at pp. 214-215.)
"Thus, far from promoting democracy, the doctrine of jury nullification undermines its most fundamental principles." (Warshawsky, supra, 85 Geo. L.J. at p. 217.) "The end result of [the jury nullification] process must be a catastrophic weakening of `the most important value of Western democracy': the rule of law." (Id. at pp. 216-217, fn. and citation omitted.)
Not only does jury nullification threaten the rule of law, it is, as noted above, unfair to a party in the case. Due process, both procedural and substantive, means that a party is entitled to a fair hearing and result in accordance with the law. (Stein v. New York (1953) 346 U.S. 156, 197, 73 S.Ct. 1077, 1099, 97 L.Ed. 1522, 1549, overruled on other grounds in Jackson v. Denno (1964) 378 U.S. 368, 391, 84 S.Ct. 1774, 1788, 12 L.Ed.2d 908, 924.) Jury nullification deprives a litigant of the right to a fair hearing and therefore denies the litigant due process of law.
Consequently, although jurors have the raw power to engage in jury nullification, it is an illegitimate power that courts must not condone. By directing jurors to inform the trial court if any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty, punishment, or any other improper basis, CALJIC No. 17.41.1 serves the important function of protecting the due process rights of litigants and promoting the rule of law.
For all the reasons stated above, we reject defendant's attack on CALJIC No. 17.41.1.

III-IV[***]

DISPOSITION
The judgment is modified to impose a $300 restitution fine, suspended unless parole is revoked, as required by Penal Code section 1202.45. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly, and to forward a copy of the amended abstract to the Department of Corrections.
NICHOLSON, J., and CALLAHAN, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III, and IV.
[**] See footnote *, ante.
[1] Thus, for example, in evaluating defendant's challenge to CALJIC No. 17.41.1, we need not decide what must be shown to establish that a juror actually has refused to deliberate.
[2] Law Day speech to the San Joaquin County Bar Association, May 1, 1998.
[***] See footnote *, ante.