Filed 9/24/20  P. v. Rivera CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLETO RANGEL RIVERA,<br><br>        Defendant and Appellant. | A157315<br><br>(Napa County Super. Ct.<br> No. 18CR001031) |

Appellant Cleto Rangel Rivera appeals from a judgment of conviction and sentence imposed after a jury found him guilty of resisting a peace officer and causing serious bodily injury (Pen. Code,[1] § 148.10, subd. (a)), and several related counts.  He contends the trial court's failure to conduct an investigation into whether one of the jurors fell asleep during trial violated his rights to due process and to an impartial jury under the Fifth and Sixth Amendments to the United States Constitution.  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A.    Procedural Background*

In April 2018, an information was filed charging appellant with resisting a peace officer causing serious bodily injury (§ 148.10, subd. (a);

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

1

counts one and two), assault upon a peace officer (§ 245, subd. (c); counts three and four), resisting an executive officer (§ 69; counts five and six), and misdemeanor giving false information to a police officer (§ 148.9, subd. (a); count seven). The information further alleged that appellant committed these offenses while on bail (§ 12022.1) and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)). Appellant pleaded not guilty and denied the allegations.

Two trials were conducted. In the first trial, a jury found appellant guilty on the lesser included offense of resisting a peace officer (§ 148) as to count two, and guilty on counts five, six, and seven. The jury was unable to reach verdicts as to counts one, three, and four and the great bodily injury special allegations, and a mistrial was declared. In a bifurcated court trial, the court found the on-bail allegation to be true.

In April 2019, a second amended information was filed charging appellant with resisting a peace officer causing serious bodily injury (§ 148.10, subd. (a); count one), and assault on a peace officer (§ 245, subd. (c); counts three and four). The information again alleged that appellant committed the offenses while on bail (§ 12022.1) and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)). Appellant pleaded not guilty.

## B.    *The People's Case*

In March 2018, Napa Police Department Detective Garrett Wade and Officer Eric Koford investigated a stolen truck. Appellant's cell phone was found in the vehicle. A records search revealed that appellant had five outstanding arrest warrants. On March 20, 2018, Detective Wade sent out a departmental "be-on-the-lookout" email with appellant's photograph.

2

The following morning, Detective Wade observed Fernando Rodriguez sitting with a woman in the lobby of the Napa Police Department. He knew Rodriguez was on probation with a search condition. Rodriguez told the detective that he had driven to the station in a white BMW that was in the parking lot. When a patsearch did not reveal any car keys, the woman said the keys were in the car along with a third person. Detective Wade called Officer Koford to make contact with the person in the car.

Officer Koford approached the car and opened the driver's side door. A man wearing a floppy hat and wraparound sunglasses was sitting in the back seat on the driver's side. Officer Koford asked the man to remove his sunglasses and immediately recognized him as the subject of Detective Wade's email. Appellant identified himself using a false name. Officer Koford asked appellant to step out of the car. As appellant exited, the officer told him multiple times to keep his hands out of his pockets.

Officer Koford ordered appellant to face the car and place his hands on top of his head with his fingers interlaced. Appellant pulled his hands away a couple of times. As he tried to conduct a patsearch, Officer Koford recognized that appellant was preparing to fight or flee. He motioned for Detective Wade to come over.

Detective Wade approached the BMW and secured a handcuff to appellant's left wrist. Both officers spoke to appellant using a mixture of English and Spanish. As Officer Koford pulled appellant's right hand behind his back, appellant started to pull forward. Detective Wade told him to relax but appellant started jerking, pushing, and kicking the officers. He pulled his arms away and turned to face Detective Wade, punching him on his face and upper body. Officer Koford wrapped his arms around appellant's waist, lowering his head into appellant's back to protect his head. He called for help

3

on his radio as appellant dragged him across the parking lot. When he lifted his head up to locate Detective Wade, appellant's elbow hit him hard in the center of his forehead, snapping his head all the way back. His vision blurred and he heard a fuzzy ringing white noise.

Detective Wade grabbed one of appellant's legs and reached up to pull him down by his belt as appellant kicked him with his other leg. The kicks landed on his entire upper body, including his neck, shoulder, and chest. Eventually all three men fell to the ground in a planter box next to the sidewalk. Officer Koford felt a strong tug and saw appellant's right hand pulling on the holster of his gun. He pulled his hip back and punched appellant in the face.

As the officers struggled with appellant on the ground, a truck driver approached and asked if they needed help. They told him to put his knees on appellant's back. Other officers arrived and they were finally able to control appellant's arms and handcuff him. Appellant continued to struggle even after he was handcuffed. A "wrap" device was applied to restrain his legs. Officer Koford testified that it was one of the most violent fights he had experienced as a police officer. A video of the incident taken from Koford's body camera was played for the jury.

After the fight was over, Officer Koford felt a sharp pain in his neck. Detective Wade's shoulder and pectoral muscle started to hurt "pretty bad" and he had cuts on his ear. An X-ray revealed that Officer Koford had sustained a fracture to his neck. He was diagnosed with an avulsion fracture in his cervical spine. Officer Koford experienced pain and discomfort and was out of work for two weeks before returning to light duty. He gradually regained some mobility with months of physical therapy. He still had soreness and limited mobility at the time of trial, symptoms that may be

4

permanent. Detective Wade was diagnosed with a torn pectoral muscle. He was placed on light duty for two weeks. The pain persisted for two or three months.

Sergeant Nick Dalessi testified that he had contacted appellant several times. On one such occasion, he stopped appellant for a vehicle code violation. When questioned about a black backpack, appellant told Sergeant Dalessi it was not his and gave consent to search it. He also allowed the officer to search his phone. A Spanish translator who was called to the scene confirmed that appellant had understood the questions and had given consent. Appellant does not speak English with anything close to fluency, but he appeared to understand Sergeant Dalessi and he complied with everything he was asked to do.

## C.    *The Defense Case*

Appellant testified that his primary language is Spanish but he does understand a little bit of English. On March 21, 2018, he was driving with Rodriguez when he fell asleep in the car. He woke up when he heard a knock on the car door and recognized the person who opened the door as a police officer. Appellant did not know where he was and was still half asleep. The officer asked for his name and he gave a false name because knew he was subject to arrest. He complied when the officer asked him to remove his hat and sunglasses and get out of the car. He put his hands on top of his head and allowed the officer to search him. The officer told him to lower his hands so he could put on the handcuffs.

Appellant jerked his right hand backwards because the handcuffs were too tight and he was in pain. The officers then grabbed his left ring finger, breaking it, and took him to the ground. He believed he had complied with their orders to the extent he understood them. He initially denied resisting

5

or punching any of the officers.  On cross-examination appellant admitted he resisted the officers, but said he never wanted to hit them.

## D.   *Jury Deliberations, Verdict, and Sentencing*

The jury reached its verdicts on the first day of deliberations, finding appellant guilty on counts one and three and guilty of the lesser included offense of simple assault on a peace officer (§ 241, subd. (c)) as to count four. The jury found the great bodily injury enhancement to be true as to count three.  In a bifurcated proceeding, the trial court found the on-bail allegation to be true.  Appellant was sentenced to an aggregate term of nine years eight months.  This appeal followed.

## DISCUSSION

Appellant's sole claim on appeal is that the trial court abused its discretion by failing to properly investigate potential juror misconduct after a juror notified the court that juror No. 10 had fallen asleep during testimony.

## A.   *Additional Background*

At the conclusion of the first day of trial following Detective Wade's testimony, a juror passed a note to the bailiff stating that juror No. 10 "fell asleep during testimony."  The court went on the record and the following exchange occurred:

"[THE COURT]:  I was handed a note by Bailiff Berg that was handed to him by a juror, and it says here, Juror No. 10 fell asleep during testimony. [¶]  I've discussed it with counsel at bench.  Certainly we don't want to embarrass Juror No. 10, but I thought I would speak to the entire jury tomorrow that if you are having—if you're getting tired and you need more breaks, or if you want to just stand in place, that's fine.  And I think that should do it.  Unless anyone wishes me to go further.

"[DEFENSE COUNSEL]:  No, sir.

6

"[PEOPLE'S COUNSEL]: No, thank you. I'm surprised. I thought it was riveting."

The following morning, the trial court instructed the jury as follows: "Before we start, I do want to say that jury trials sometimes are boring or sometimes they drag out and they're very difficult sometimes to stay awake. Please know that I'm happy to give you a break at any time, or maybe we don't need a full break but you could just stand in place and stretch. I might ask you from time to time if any of you would like such a break. If not, feel free to raise your hand and let me know. I'm not always good at that, but obviously you have to pay attention to the evidence or it can cause us a mistrial and have to start over. So, please—and this applies to everyone. So please be as alert as you can." The trial court and the parties did not discuss the matter again.

During jury deliberations, the jury sent a note stating that juror No. 10 needed to hear Detective Wade's testimony from the time Officer Koford motioned for help until appellant was cuffed. The court reporter read the requested testimony to the jury.

## B.    *Law Regarding Juror Inattention*

Section 1089 authorizes the trial court to discharge and replace a juror who "becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty." Such good cause may exist if a juror is sleeping or inattentive during trial. (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 411 (*Hasson*); *People v. Bradford* (1997) 15 Cal.4th 1229, 1349 (*Bradford*); *People v. Bonilla* (2007) 41 Cal.4th 313, 350.) " Once a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty 'to make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged.' " (*Bradford*, at p. 1348.) However,

7

"[a] juror must not be discharged for sleeping unless there is convincing proof the juror actually slept during trial." (*People v. Bowers* (2001) 87 Cal.App.4th 722, 731.)

" 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court. [Citation.] The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.' " (*People v. Osband* (1996) 13 Cal.4th 622, 675.) A hearing is required only where the court possesses information which, if proved to be true, would constitute "good cause" to doubt a juror's ability to perform his or her duties and would justify his or her removal from the case. (*Id.* at pp. 675–676.) Mere speculation that a juror might have been sleeping or inattentive is insufficient to provide notice of good cause to discharge, and does not obligate a trial court to conduct an inquiry. (*People v. Espinoza* (1992) 3 Cal.4th 806, 821.)

## C.    *Analysis*

The Attorney General contends that appellant's claim is forfeited on appeal. We agree.

Appellant forfeited his right to complain about the trial court's failure to investigate whether juror No. 10 slept during testimony because his trial counsel agreed to the court's decision to admonish the jury generally without conducting any further inquiry. (See *People v. Williams* (2013) 58 Cal.4th 197, 289 [defendant forfeited claim regarding sleeping juror where he "neither objected to [the juror's] continued service nor requested a mistrial on the ground of juror misconduct"]; see also *People v. Holloway* (2004) 33 Cal.4th 96, 124 ["defendant forfeited this issue [of alleged juror

8

misconduct] by failing to seek the juror's excusal or otherwise object to the court's course of action"].) Even after the court received a note during deliberations that juror No. 10 wanted a readback of a portion of Detective Wade's testimony, appellant did not raise any issue of juror inattentiveness or misconduct. Having agreed to the court's admonishment and to forgo any further corrective measures, appellant cannot now object to the court's failure to conduct such an inquiry.

Even if we were to reach the merits of appellant's claim, we would find no error in the trial court's decision to admonish the jury without further inquiry. In considering claims of juror inattentiveness, our Supreme Court has observed that " 'although implicitly recognizing that juror inattentiveness may constitute misconduct, courts have exhibited an understandable reluctance to overturn jury verdicts on the ground of inattentiveness during trial. In fact, not a single case has been brought to our attention which granted a new trial on that ground. Many of the reported cases involve contradicted allegations that one or more jurors slept through part of a trial. Perhaps recognizing the soporific effect of many trials when viewed from a layman's perspective, these cases uniformly decline to order a new trial *in the absence of convincing proof that the jurors were actually asleep during material portions of the trial.*' " (*Bradford, supra,* 15 Cal.4th at p. 1349, quoting *Hasson, supra,* 32 Cal.3d at p. 411 (italics added).)[2]

---

[2] The inattention in *Hasson* took the form of jurors reading a novel and doing crossword puzzles during the presentation of evidence. The court found that this significant diversion of the jurors' attention constituted misconduct and raised the presumption of prejudice. (*Hasson, supra,* 32 Cal.3d at pp. 410, 412 [affirming denial of new trial because presumption of prejudice was rebutted].)

Contrary to appellant's argument on appeal, a trial court is not under a sua sponte duty to conduct an investigation whenever it receives information that a juror may have committed misconduct. Nor is it necessarily required to dismiss a juror who falls asleep during trial. Again, the decision whether to investigate the possibility of juror misconduct rests in the sound discretion of the trial court. (*People v. Ray* (1996) 13 Cal.4th 313, 343.)

*Bradford, supra,*15 Cal.4th 1229, is instructive. There, the trial court observed that a juror was asleep during defense counsel's cross-examination of a detective. (*Id.* at pp. 1347–1348.) The record showed "no more than that the juror had fallen asleep on the day in question and appears to have been asleep one day earlier; it d[id] not appear that the juror continued to fall asleep or had been asleep for a longer period of time." (*Id.* at pp. 1348–1349.) The defense counsel did not argue juror misconduct or request a hearing, and the trial court made no further inquiry regarding the juror's attentiveness. The reviewing court concluded the lower court did not abuse its discretion in failing to inquire about possible juror misconduct in light of the "absence of any reference in the record to the juror's inattentiveness over a more substantial period." (*Id.* at p. 1349.)

On this record, we cannot conclude that the trial court was put on notice of a potential need to discharge juror No. 10. At most, the record shows only a single possible instance of juror inattentiveness during the course of the entire trial. There was no indication that the parties or the trial court observed juror No. 10 to be sleeping. Nevertheless, based on the other juror's note, the court promptly addressed the issue by admonishing the jury generally. Defense counsel's acquiescence to the court's admonishment, made without a concomitant assertion of juror misconduct or a request for a hearing on the subject, is indicative that the juror's conduct did not warrant

10

such a hearing.  We find no abuse of discretion on this record, and certainly no violation appellant's right to due process of law and a fair trial.

## DISPOSITION

The judgment is affirmed.

_____
Sanchez, J.

WE CONCUR:


_____
Humes, P. J.


_____
Banke, J.

*A157315  People v. Rivera*