[No. C030938. Third Dist. Mar. 7, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
REGINALD BOWERS, Defendant and Appellant.

COUNSEL

Susan D. Shors, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NICHOLSON, Acting P. J.**—At trial in this case, the court discharged a juror for failure to deliberate, even though the juror listened to all of the evidence, participated to some extent in the discussions concerning the evidence in the jury room, and remained willing and able to vote concerning the verdict. We conclude the trial court abused its discretion by discharging this juror and therefore reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted defendant Reginald Bowers of one count of penetration with a foreign object of a person under 16 years of age and three counts of

oral copulation with a person under 16 years of age. It also found true allegations defendant served three prior prison terms. Defendant was sentenced to 13 years in prison.

The facts of the underlying crimes are not relevant to this court's determination whether Juror No. 4 was properly discharged. Therefore, we will limit our discussion to the facts concerning the trial court's supervision of the jury.

Jury deliberations began on Thursday, April 10, 1997. The next day the jury requested a readback of the testimony of the victim, which was held the following Monday. On April 15, the jury was released for the day because Juror No. 1 had been involved in a car accident. Readback of the victim's testimony was continued on April 16, 1997.

On April 16, 1997, at 9:10 a.m., the court received a note from the jury requesting the readback of the testimony of another prosecution witness, who was defendant's daughter and a friend of the victim. At 10:30 a.m., the court received another note from the jury indicating they could not come to a unanimous decision.

The jury foreman, Juror No. 2, indicated he would like to speak to the court by himself. The foreman told the court he was concerned one of the jurors was not deliberating. As a result, the court decided Juror No. 4 had not followed the court's instructions regarding deliberations, and told the parties it would reinstruct the entire jury.

On April 16, 1997, the court instructed the jury using CALJIC Nos. 1.00 (the respective duties of judge and jury) and 2.90 (presumption of innocence, reasonable doubt and burden of proof). The court also instructed using CALJIC Nos. 17.40 and 17.41 (6th ed. 1996) as follows: "The People and the defendant are entitled to the individual opinion of each juror. Each of you must consider the evidence for the purpose of reaching a verdict if you can do so. Each of you must decide the case for yourself, but you should do so only after discussing the evidence and instructions with the other jurors. [¶] Do not hesitate to change an opinion if you are convinced it is wrong. Do not decide any question in a particular way because a majority of the jurors or any of them favor such a decision. . . . [¶] The attitude and conduct of jurors at all times is very important. It is rarely helpful for a juror at the beginning of deliberations to express an emphatic opinion on the case or to announce a determination to stand for the certain verdict. When one does that at the outset a sense of pride may be aroused and one may hesitate to change a position even if it is shown to be wrong. Remember you are not partisans or advocates in this matter. You are impartial judges of the facts."

The court explained: "What these instructions mean is that each juror must participate in the discussions of the evidence and reach a verdict if possible only after joining in deliberations with the other jurors. . . ." It then offered specific suggestions to "assist [the jury] in engaging in meaningful deliberations."

The jury was sent back for further deliberations at 1:30 p.m. The court received another note from the foreman two hours later. The note indicated one juror, later identified as Juror No. 4, had stated, "I heard everything in the other room. I knew then this did not happen. I am not changing my mind and I [cannot] change your minds." The court subsequently interpreted "the other room" to mean in the courtroom. Defendant moved for mistrial, and the court deferred its ruling.

In a meeting between the jury foreman and the trial judge, the foreman expressed his concern Juror No. 4 had made up his mind about his position from the beginning. The foreman believed if the jury continued its deliberations they might "make some points" one way or the other with Juror No. 4. The foreman conceded that Juror No. 4 had participated in deliberations at times, but sometimes sat alone in a corner.

Based on the second note and its discussion with the foreman, the court found good cause to conduct an investigation to determine whether any juror was refusing to deliberate. Starting on April 17, 1997, over defendant's objections, the court questioned each juror individually in the presence of counsel and defendant regarding the process of deliberations, that is, "whether or not [Juror No. 4], as indicated by [the foreman] or any juror, failed to engage in deliberations." The court admonished each juror not to expose the jury's thought processes and tried to ask each juror the same questions, in an effort to limit the scope of the investigation to the manner of deliberations. Counsel were allowed to question the jurors through the court only.

In their testimony, the jurors disagreed about what happened during deliberations, specifically the degree of Juror No. 4's participation. Many jurors testified Juror No. 4 had participated in the jury deliberations from the beginning, and had advised the other jurors of his decision and the basis for that decision, specifically, that he did not believe the testimony of the prosecution's witnesses. Other jurors testified Juror No. 4 had made up his mind from the beginning, refused to participate at certain times by staring out the window, and had not fully engaged in discussions nor responded to questions. In addition, Juror No. 7 alleged Juror No. 4 had fallen asleep during the deliberations. However, the entire panel agreed Juror No. 4 held

steadfastly to his decision and could not be convinced the majority's opinion was right.

Juror No. 4 testified that after closing arguments he was "kind of 50/50," but had come to a preliminary decision. He stated the jury initially talked about the timing of the incident, and then they took a vote, in which he participated. The jury proceeded to talk about the evidence. Juror No. 4 listened to the other jurors, and gave his opinion that he did not believe the testimony of certain witnesses.

Juror No. 4 said the majority tried to convince him defendant was guilty, but he told them he was "not willing . . . [t]o go with what they think about it because of the majority." (*Sic.*) After this Juror No. 4 did not talk about his reasons or argue with the others because "[t]hat's their belief. That's what they heard. And I stayed with what I think is right."

At that point Juror No. 4 just listened to what the others were saying. He believed he had an open mind and may have changed his opinion "if they convinced" him. As the days went by, Juror No. 4 continued to believe the prosecution witnesses had not told the truth.

After the court reinstructed the jury, Juror No. 4 told the jury he had "thought about this over and over," during deliberations and at home, to see if he could be convinced differently. He stated he had "heard everything already," and was going to stick with what he believed.

After summarizing the testimony given by all the jurors, the court ruled Juror No. 4 should be discharged. Because the court's reasoning in arriving at this conclusion is at the heart of our review on this issue, we relate that reasoning in detail:

"In short, the consistent statements of all the jurors is that [Juror No. 4] refused to engage in meaningful deliberations. The Court notes [*People v. Johnson* (1993) 6 Cal.4th 1 [23 Cal.Rptr.2d 593, 859 P.2d 673]], which indicated that the Court may remove a juror for good cause, if that juror is not paying attention. In this case we have . . . statements from jurors that he fell asleep, that he walked around and crossed his arms and that he refused to respond when the other jurors attempted to get him to participate. It even appears they came close to begging him. The Court recalls the different jurors indicating that they explained to him that they could not do their deliberations unless he would explain to them the basis for his reasoning for the position that he had taken. And that he actually refused to do so. [¶] . . . [¶] .

"The Court believes that based on the record before it, there is substantial evidence and demonstrable reality that this juror, Juror Number 4, . . . did not enter into meaningful deliberations. That either he made up his mind here in the courtroom after having heard the first witness, which is what he apparently told his fellow jurors or once he got in the jury room after he initially and almost immediately indicated his position and refused to meaningfully discuss that position with the other jurors or to meaningfully consider the statements and the evidence as they attempted to discuss with him. And that he refused to participate with them even after their numerous efforts to advise him of his duty and to attempt to elicit cooperation.

"The Court notes it was probabl[y] a very uncomfortable circumstance in the jury room due to the level of frustration. However, one of the jurors made an interesting statement when that juror stated to the Court that it appeared . . . [Juror No. 4] . . . had committed what the Court cautioned the jurors not to do, that is, to state an opinion early and have a sense of pride to prevent them from further considering the evidence. [¶] . . . That Juror Number 4 had fallen into that particular trap of pride. Whatever the reasons, it appears to the Court that the Court has good cause to excuse [Juror No. 4]."

On April 22, 1997, the court substituted an alternate juror and instructed the jury to start its deliberations from the beginning. The jury returned guilty verdicts the next day of deliberations.

## Discussion

■■■ Defendant contends the discharge of Juror No. 4 for refusing to deliberate was without good cause as required by Penal Code section 1089, and violated his constitutional right to a full and fair trial by an impartial and unanimous jury under the Sixth Amendment to the United States Constitution. We agree with the statutory argument and therefore need not reach the constitutional claim. (See *Lyng v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [108 S.Ct. 1319, 1323, 99 L.Ed.2d 534, 544]; see also *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231 [45 Cal.Rptr.2d 207, 902 P.2d 225] [fundamental and long-standing principle of judicial restraint to avoid reaching constitutional questions in advance of necessity of deciding them].)

Juror No. 4 was discharged pursuant to Penal Code section 1089, which provides in part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, . . . the court

may order him to be discharged and draw the name of an alternate [juror] . . . ." ■ Although misconduct can constitute grounds to believe that a juror will be unable to fulfill his or her functions as a juror, such misconduct must be "serious and wilful." (*People v. Daniels* (1991) 52 Cal.3d 815, 864 [277 Cal.Rptr. 122, 802 P.2d 906].)

The decision whether to investigate the possibility of juror misconduct as well as the ultimate decision whether to retain or discharge a juror is subject to the sound discretion of the trial court. (*People v. Castorena* (1996) 47 Cal.App.4th 1051, 1065 [55 Cal.Rptr.2d 151]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1348 [65 Cal.Rptr.2d 145, 939 P.2d 259].) This discretion is, however, " 'at most . . . limited.' " (*People v. Collins* (1976) 17 Cal.3d 687, 696 [131 Cal.Rptr. 782, 552 P.2d 742]; *People v. Roberts* (1992) 2 Cal.4th 271, 325 [6 Cal.Rptr.2d 276, 826 P.2d 274].) The trial court's discretion under this section is "bridled to the extent" the juror's inability to perform his or her functions must appear in the record as a "demonstrable reality," and "court[s] must not presume the worst" of a juror. (*People v. Franklin* (1976) 56 Cal.App.3d 18, 25-26 [128 Cal.Rptr. 94]; see also *People v. Lucas* (1995) 12 Cal.4th 415, 489 [48 Cal.Rptr.2d 525, 907 P.2d 373]; *People v. Johnson, supra,* 6 Cal.4th at p. 21; *People v. Halsey* (1993) 12 Cal.App.4th 885, 892 [16 Cal.Rptr.2d 47].)

■ A brief historical review of Penal Code section 1089 shows the significant limitation on the trial court's discretion to discharge jurors and the reasoning underlying the limitation. The California process for substitution of jurors under Penal Code section 1089 and Code of Civil Procedure section 233 preserves the essential features of the jury trial required by the Sixth Amendment and due process clause of the Fourteenth Amendment. (*Miller v. Stagner* (9th Cir. 1985) 757 F.2d 988, 995.) Penal Code section 1089, as originally enacted in 1895, allowed the substitution of an alternate only when a juror was incapacitated by death or illness.

In 1930, the California Supreme Court held, in *People v. Howard* (1930) 211 Cal. 322 [295 P. 333, 71 A.L.R. 1385], that the discharge of a juror who asked to be discharged because of admitted prejudice toward two witnesses did not violate the defendant's right to trial by jury, even though the circumstances were not within the purview of Penal Code section 1089. The statute was amended in 1933 to permit the court to substitute an alternate when "a juror requests a discharge and good cause appears therefor . . . ."

Situations continued to arise where the interests of justice made it desirable to discharge a juror for reasons other than those expressly set forth in the statute. For example, *People v. Burns* (1948) 84 Cal.App.2d 18 [189 P.2d

868], presented a question of the propriety of substituting an alternate juror when a regular member of the panel was found, after the commencement of the trial, to be under indictment for a felony. Although this situation did not fit squarely within the language of the statute, the court believed justice would not be served by allowing this juror to remain on the panel.

The *Burns* case provided the impetus for the Legislature to accept the proposal of the Commission for the Study of Criminal Law and Procedure to amend the statute. (*The Work of the California Legislature* (1949) 23 So.Cal. L.Rev. 1, 30-31.) Thus, in 1949, the code section was amended to its present form which provides for the discharge of a juror in one of four circumstances: (1) death; (2) illness; (3) at the juror's request if good cause is shown; and (4) "upon other good cause shown to the court" the juror is "unable to perform his duty." (Pen. Code, § 1089.) Only the last circumstance, inability to perform as a juror, is implicated in this case.

"Good cause" is not defined in the statute. The definition has evolved on a case-by-case basis since the term was added to the statute in 1933. It is instructive to note the legislative history concerning what constitutes good cause to discharge a juror reflects "a definite unwillingness on the part of the Legislature to either adopt a practice of unrestricted substitution of jurors or to authorize a wide discretion in the trial court beyond that required to apply the facts shown to any one of the four causes for substitution which are set forth in the statute." (*People v. Hamilton* (1963) 60 Cal.2d 105, 126 [32 Cal.Rptr. 4, 383 P.2d 412], disapproved on other grounds in *People v. Daniels, supra,* 52 Cal.3d at pp. 864-865.)

Based on our understanding of Penal Code section 1089 and its history and on a review of the record as a whole, we conclude the trial court abused its discretion when it discharged Juror No. 4. While there was some evidence Juror No. 4 was inattentive at times during the deliberations and did not participate in the deliberations as fully as others, the record shows this conduct was a manifestation, effectively communicated to the other jurors, that he did not agree with their evaluation of the evidence—specifically, their credibility determinations. There appears no demonstrable reality that Juror No. 4 was unable to perform his function and he did not engage in serious and willful misconduct. Accordingly, the record does not support the trial court's exercise of its bridled discretion to eliminate Juror No. 4's dissenting vote on the jury to obtain a verdict.

*Inattentiveness of Juror*

The trial court relied on *People v. Johnson, supra,* 6 Cal.4th 1, to justify its discharge of Juror No. 4 for inattentiveness. In *Johnson,* a juror was discharged during trial, not during deliberations, because he appeared to be

paying no attention to the proceedings, slept during trial, and lied in his jury questionnaire about having been arrested. (*Id.* at pp. 16, 21.)

A juror must not be discharged for sleeping unless there is convincing proof the juror actually slept during trial. (See *People v. Johnson, supra,* 6 Cal.4th at p. 21, citing *Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 411 [185 Cal.Rptr. 654, 650 P.2d 1171].) Here, only one juror said anything about Juror No. 4 sleeping during deliberations. The trial court did not ask the other jurors about it during its investigation. In a period of several days, Juror No. 4 appears to have slept only a very brief time. There was no evidence concerning what was happening in the jury room when he slept. Even deferring to the trial court's factual finding Juror No. 4 slept, the bare fact of sleeping at an unknown time for an unknown duration and without evidence of what, if anything, was occurring in the jury room at the time is insufficient to support a finding of misconduct or to conclude the juror was unable to perform his duty. (See *People v. Daniels, supra,* 52 Cal.3d at p. 864 [misconduct must be serious and willful].)

Other evidence cited by the trial court concerning Juror No. 4's inattentiveness is that "he walked around and crossed his arms and that he refused to respond when the other jurors attempted to get him to participate." While the court cites this behavior as inattentiveness, it is clear from the record that Juror No. 4 disbelieved the prosecution's witnesses, communicated this disbelief to the other jurors and, at all times, stood ready to cast his vote concerning a verdict. The problem with the deliberations was that the jurors were at impasse, not that Juror No. 4 was inattentive. Accordingly, inattentiveness was not a valid ground upon which to discharge Juror No. 4.

*Deliberation*

■ The other ground for the trial court's discharge of Juror No. 4 was failure to "enter into meaningful deliberations." Considering the record as a whole, we conclude it does not reflect a demonstrable reality that Juror No. 4 was unable to perform his function as a juror; instead, it shows his behavior was a communicated manifestation of his perceptions and opinions concerning the evidence. Accordingly, the trial court abused its discretion in discharging Juror No. 4.

The trial court received a second note from the foreman, which indicated one of the jurors had stated he had heard everything in the courtroom, knew the incident had not happened and he was not changing his mind, nor was he going to try to change the other jurors' minds. The trial court exercised its discretion to examine the jurors because it believed one of the panel was

possibly refusing to deliberate, which, if proved true, would constitute good cause to discharge him. (See *People v. Thomas* (1994) 26 Cal.App.4th 1328, 1333 [32 Cal.Rptr.2d 177].)

In *Thomas,* the court found Juror B "did not answer the questions posed to him by the other jurors, did not sit at the table with other jurors during deliberations, acted as if he had already made up his mind before hearing the whole case, and did not look at the two victims in the courtroom." (*People v. Thomas, supra,* 26 Cal.App.4th at p. 1333.) In addition, Juror B expressly violated the instructions of the court by sneaking notes he made during trial home in his sock. (*Ibid.*)

Here, unlike *Thomas,* the record contains sufficient evidence Juror No. 4 deliberated and participated to some degree in group discussions. Although some jurors testified Juror No. 4 made up his mind early on and "clammed up" at certain times, the jurors admitted Juror No. 4 took part in some of the discussions and made his opinion known. Additionally, Juror No. 4 did not violate the court's instructions, unlike Juror B in *Thomas,* who sneaked his trial notes home in his sock despite the trial court's express warning not to do so. Such conduct, if repeated, can be serious and willful misconduct warranting removal. (*People v. Daniels, supra,* 52 Cal.3d at pp. 863-864.)

In this case, the jurors gave conflicting testimony as to what happened during deliberations, specifically concerning the degree of Juror No. 4's participation. Many jurors testified Juror No. 4 had participated in the jury deliberations from the beginning, and had advised the jury of his decision and the basis for that decision. Even though the trial court made an effort not to delve into the juror's thought processes, the record reveals Juror No. 4's decision was based on his belief the prosecution's witnesses did not tell the truth. For example, Juror No. 4 told the trial court he gave his opinion about the testimony he heard in court. Juror No. 5 told the trial court Juror No. 4 said, "I don't believe the witnesses." Juror No. 6 stated Juror No. 4 said "he didn't believe" and that "[t]here was one witness that he singled out" after the rereads. Juror No. 8 remembered Juror No. 4 saying he made up his mind when the first witness was on the stand and explained why he felt the same way after the reread of the testimony. Juror No. 9 indicated Juror No. 4 stated his position pretty strongly after going through all the testimony, and his position had to do with specific testimony. Juror No. 10 said Juror No. 4 stated he knew who lied and who told the truth. Juror No. 11 said Juror No. 4 concentrated on just a certain part of the evidence, and was quiet after the reread because he did not believe the testimony given.

Other jurors testified Juror No. 4 had made his mind up from the beginning, refused to participate at certain times by staring out the window, and

had not fully engaged in discussions nor responded to questions. However, the entire panel agreed Juror No. 4 held steadfastly to his decision and could not be convinced the majority's opinion was right.

Based on this record, the trial court found there was "substantial evidence and demonstrable reality" Juror No. 4 did not enter into meaningful deliberations. Specifically, the court found Juror No. 4 refused meaningfully to discuss his position with the other jurors and would not meaningfully consider the statements and evidence the jurors attempted to discuss with him.

One of the elements of a defendant's right to trial by jury includes the requirement that jurors deliberate before reaching a verdict. (*People v. Collins, supra,* 17 Cal.3d at p. 693.) Although the jurors gave conflicting testimony as to the level of Juror No. 4's active participation in the jury discussions, formal discussion is not necessarily required to reach a decision or conclusion by deliberation. In a given case to "deliberate" means "to ponder or think about with measured careful consideration and often [but not necessarily] with formal discussion before reaching a decision or conclusion." (Webster's 3d New Internat. Dict. (1986) p. 596.)

This definition of "deliberate" is not only consistent with the history of Penal Code section 1089 and the relevant case law, but also furthers the goal of maintaining the secrecy and sanctity of jury deliberations. As happened in this case and others, although a trial court tries to circumscribe its investigation, the process of examining jurors to determine whether someone is refusing to deliberate often inadvertently and inappropriately reveals the jurors' thought process.

The trial court believed Juror No. 4 failed to follow the court's admonition in CALJIC No. 17.41, and had either made up his mind in the courtroom after hearing the first witness or almost immediately after deliberations started. That conduct, identified in the instruction as "rarely helpful," does not amount to misconduct or a failure to deliberate.

The language of CALJIC No. 17.41 is derived from an early decision by the Supreme Court upholding a jury instruction advising " 'it would be better that they refrain from emphatic declarations of opinion and hold their minds "in a state of abeyance," so that they might "fully and freely interchange views with each other," it being "for the interests of the State and the benefit of the defendant, that a verdict should be returned." ' " (*People v. Bradford, supra,* 15 Cal.4th at p. 1352, quoting *People v. Selby* (1926) 198 Cal. 426,

439 [245 P. 426].) This instruction, while strongly suggestive in its terms, does not impose a mandatory duty on the jurors. (*People v. Neely* (1979) 95 Cal.App.3d 1011, 1018 [157 Cal.Rptr. 531].)

It is not uncommon for a juror (or jurors) in a trial to come to a conclusion about the strength of a prosecution's case early in the deliberative process and then refuse to change his or her mind despite the persuasive powers of the remaining jurors. The record suggests that, after listening to all the evidence in court and observing the witnesses, Juror No. 4 determined they lacked credibility and were lying.

CALJIC No. 17.40, with which the trial judge twice instructed the jurors, reminded them of their duty to deliberate. However, a party's right to have his case decided by a jury does not necessarily include the right to compel jurors to discuss issues that they have chosen to decide without discussion. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 910-911 [64 Cal.Rptr.2d 492].) The trial court correctly instructed the jury that "each [juror] must decide how [he or she] will deliberate and engage in that deliberation."

Code of Civil Procedure section 613 states: "When the case is finally submitted to the jury, they may decide in Court or retire for deliberation . . . ." This statute does not require that the jurors deliberate with each other. Instead, deliberation may be done on an individual basis. (*Vomaska v. City of San Diego, supra,* 55 Cal.App.4th at pp. 910-911.)

For example, in *Vomaska v. City of San Diego, supra,* 55 Cal.App.4th 905, 912, at the end of the trial the jurors took a straw vote, which revealed 10 jurors were in agreement; only 9 were needed to return a verdict. The jury decided to render their verdict rather than discuss the issue further. The court noted "[t]his procedure is a type of 'deliberations,' in that each juror—having considered the evidence and arguments independently—is setting forth his or her opinion, albeit without accompanying reasons or explanations." (*Ibid.*) The court then explained if the jury chooses to discuss the case, "each juror must have the opportunity to participate equally in all discussions in order to satisfy the constitutional right to trial by jury." (*Ibid.*) Like Code of Civil Procedure section 613, Penal Code section 1128 permits a jury to decide a case in the courtroom without retiring.

Here, all the jurors had the opportunity to participate in the jury's discussions. The record reflects Juror No. 4 both took part in those discussions to some extent, and considered the evidence he believed to be crucial in determining defendant's guilt—the victim's testimony. In performing his

duty to judge the credibility of witnesses, Juror No. 4 observed the witnesses' demeanor and listened to the testimony presented in court. He participated in the request for the readback of testimony and again listened to the reread of the victim's testimony in the jury room. Ultimately, Juror No. 4 found the witness lacked credibility and did not believe her story that defendant had molested her.

Individuals acquire different methods of processing information and decisionmaking based on their background and experiences. It is unrealistic to expect each person or each jury to deliberate and come to a conclusion in the same fashion. Here, the method of deliberation varied from juror to juror. For example, Juror No. 9 testified: "There was one [juror] that didn't seem to participate at all. There's [*sic*] a couple of the jurors who are the kind of people that will just sit back and listen and think about it a little, kind of come to a conclusion and then speak. There are others of our group that—they're talkers." Clearly, Juror No. 4 was a person whose manner of deliberating was more understated than the rest of the jury. However, this does not demonstrate Juror No. 4 either refused to deliberate or was unable to perform his functions as a juror.

It cannot be said a juror has refused to deliberate so long as a juror is willing and able to listen to the evidence presented in court, to consider the evidence and the judge's instructions, and to finally come to a conclusion and vote, which is precisely what Juror No. 4 did. If the jury hangs because one juror has persistent doubts about the sufficiency of evidence against defendant despite deliberating without bias, a mistrial should result. Juror No. 4 made his decision based on his assessment that the victim's testimony lacked credibility.

In sum, based on the testimony of the jurors that Juror No. 4 participated to some extent in their discussions, expressed the reasons for his decision, and remained willing and able to vote concerning a verdict, it is not possible to say, as the Supreme Court requires in order to discharge a juror, that the record shows there is a "demonstrable reality" that he was unable to perform as a juror. (*People v. Marshall* (1996) 13 Cal.4th 799, 843 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People v. Johnson, supra,* 6 Cal.4th at p. 21.) Therefore, Juror No. 4 was excused without good cause.

A trial court's error requires reversal only if it is reasonably probable that a result more favorable to the defendant would have been reached but for the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People v. Wims* (1995) 10 Cal.4th 293, 315 [41 Cal.Rptr.2d 241, 895 P.2d 77].) Here, the record strongly suggests Juror No. 4 was the lone holdout juror who

steadfastly held to his belief defendant was not guilty throughout the course of deliberations and until he was discharged. Had he been allowed to remain on the jury panel, it is reasonably probable the case would have ended in a mistrial; a more favorable result for defendant than conviction. (*People v. Watson, supra,* at p. 836.) Instead, after less than one day of deliberation the new jury returned verdicts of guilty. The requisite harm has thus been shown.

## DISPOSITION

The judgment is reversed.

Hull, J., concurred.

**CALLAHAN, J.**—I respectfully dissent. Although a challenged juror's inability to perform his or her function must appear as a demonstrable reality to justify dismissal under Penal Code section 1089 (*People v. Feagin* (1995) 34 Cal.App.4th 1427 [40 Cal.Rptr.2d 918]), this limitation does not alter the fundamental principles of appellate review. The trial court is best able to observe the appearance and demeanor of the jurors in order to decide whether there is good cause for discharge. (*People v. Beeler* (1995) 9 Cal.4th 953, 989 [39 Cal.Rptr.2d 607, 891 P.2d 153].) Thus, "[t]he determination of 'good cause' rests in the sound discretion of the court [citations], and the court's finding thereof will be upheld if substantial evidence supports it [citation]." (*People v. Johnson* (1993) 6 Cal.4th 1, 21 [23 Cal.Rptr.2d 593, 859 P.2d 673].) Having carefully reviewed the record, I cannot conclude the court abused its discretion in deciding there was good cause to discharge Juror No. 4 in the circumstances of this case.

The court questioned Juror No. 4 about the note it received which read: "One juror has stated[,] 'I heard everything in the other room. I knew then this did not happen. I am not changing my mind[,] and I change your minds [*sic*].' " The juror acknowledged the statement was "basically" what he said in the jury room. He also explained the first two sentences meant he "heard everything that was said in the courtroom, and [he] knew while [he] was in the courtroom that this didn't happen." Juror No. 4 felt he heard all the evidence and the other jurors were not going to tell him anything he had not already heard. Thus, Juror No. 4's own testimony supports the court's finding as a "demonstrable reality" that he did not enter into meaningful deliberations. (*People v. Feagin, supra,* 34 Cal.App.4th at p. 1435.)

Moreover, all but one of the jurors testified Juror No. 4 made up his mind before deliberations began. Several jurors described Juror No. 4's refusal to

participate in the deliberative process and his decision to ignore the court's instructions. They also noted Juror No. 4 stated several times that he had made up his mind and would not change it. Juror No. 4 also testified he had heard everything and was unwilling to change his position.

Thus, there is ample support in the record for the court's determination that Juror No. 4 refused to enter into meaningful deliberations. Because refusal to deliberate qualifies as good cause (*People v. Thomas* (1994) 26 Cal.App.4th 1328, 1333 [32 Cal.Rptr.2d 177]), I would affirm.

On March 29, 2001, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied June 13, 2001.