Filed 2/5/21  P. v. Villarreal-Guzman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ZULEMA VILLARREAL-GUZMAN,<br><br>        Defendant and Appellant. | A157824<br><br>(Contra Costa County<br>Super. Ct. No. 05-181249-4) |

A jury convicted defendant of felony driving under the influence of alcohol causing injury and felony driving with a 0.08 percent blood-alcohol content causing injury.  As to both counts, the jury found true defendant inflicted great bodily injury.  On appeal, defendant contends the trial court erroneously denied her Penal Code section 17, subdivision (b) (section 17(b)) motion to reduce her felony convictions to misdemeanors because the court was not aware it had the discretion to do so.  She further contends the court failed to adequately investigate defense claims that one of the jurors had slept during portions of the trial.  We disagree and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a car accident.  Because defendant does not challenge the sufficiency of the evidence to support her convictions or the associated enhancements, we briefly set out the essential facts.  We will also

set out more fully facts pertinent to defendant's contentions in the discussion section of this opinion.

After Jose G. finished working in Concord, he drove his company's flatbed truck westbound on Highway 24, toward Oakland. It had bench-style seating with room to fit three people. Two of his coworkers, Juan A. and Raymundo V., were seated on the bench. Raymundo sat in the middle and Juan sat by the passenger window. Jose was wearing a seatbelt.

Jose got on the road around midnight. As he was driving in the second lane from the barrier on Highway 24, at approximately 55 miles per hour, he felt an impact on the right rear of the truck and lost control of it. The impact "tilted to the driver's side," and when the truck came to a stop, it was flipped on the driver's side in the fast lane. By kicking out the front windshield, Jose was able to extricate himself from the truck. While he was standing on the highway, he saw Juan located 10 feet away from the truck in the fast lane and Raymundo on the right-hand side of the truck. Juan was laying facedown and Raymundo was face up. Both had visible injuries and were screaming in pain. Each suffered serious injuries.

Following the accident, Jose observed a car parked on the right-hand side of the highway with damage to the hood and the front bumper. He also saw a "scared" woman calling 911.

California Highway Patrol (CHP) Officer Nelson Fulgencio arrived at the accident scene between 12:15 a.m. and 12:16 a.m. He initially observed an overturned "work truck" turned on the driver's side, blocking the center median and the fast lane. Two women, including defendant, were talking with CHP Officer Martinez on the right shoulder of the freeway where a Nissan sedan was parked nearby. The Nissan had major front-end damage, a crushed bumper, a crushed grille, and the windshield was shattered. The

2

vehicle was partially blocking the slow lane and partially on the right shoulder of the freeway.

Fulgencio spoke with defendant who admitted she had been driving the Nissan. The officer asked defendant how the collision occurred. Defendant responded she was in the slow lane when she tried to change lanes and must have hit a car. Defendant indicated she had been traveling at 65 miles per hour.

As Fulgencio spoke with defendant, he noticed she had red, watery eyes, and he could smell an odor of an "alcoholic beverage emitting from her." He asked defendant if she had been drinking prior to the accident. At first, defendant stated she had not been drinking. Dissatisfied with defendant's response, the officer asked her about the last time she consumed an alcoholic beverage. At this point, defendant admitted consuming two bottles of beer between 4:00 p.m. and 5:00 p.m. Because Fulgencio suspected defendant was under the influence of alcohol, he administered various field sobriety tests to her. He first administered the horizontal gaze nystagmus test, requiring defendant to watch a moving object, in this case, the officer's pencil, without moving her head. The officer observed defendant's eyes drift and jerk through the test, providing six "clues" confirming Fulgencio's suspicion defendant was under the influence of alcohol. Additionally, defendant had difficulty performing aspects of the other field sobriety tests.

Approximately 40 to 45 minutes after contacting defendant, Fulgencio had defendant breathe two times into a preliminary alcohol screening device to determine her blood-alcohol content. The first result obtained at 12:59 a.m., showed defendant had a blood-alcohol content of 0.126 percent. The second result obtained at 1:01 a.m., showed a blood-alcohol content of 0.140 percent. Less than an hour later at the CHP station, a breath test was

administered to defendant. Tests were administered at 1:39 a.m. and 1:42 a.m., showing a blood-alcohol content of 0.13 percent.

According to Criminalist Denise Gallagher, alcohol impairs a person's judgment and driving skills. All drivers are considered legally impaired when their blood-alcohol content is greater than 0.08 percent, and some people are physically impaired at lower levels. If a person shows six "clues" on the horizontal gaze nystagmus test, those clues would confirm the presence of a central nervous system depressant in the person's blood.

Dr. Paul Herman, a defense accident reconstruction expert, used a three-dimensional simulation called "PC-Crash." It takes into account the terrain, the technical specifications of the vehicles, and "does the dynamics of the movement of the vehicles over that terrain and through crashes." Using photographs of the area and the CHP reports, Dr. Herman "input all the information [he had] into the code," including details about the vehicles— whether they are sitting still, moving, direction of movement, braking, and turning. According to Dr. Herman, the code "takes the input information, applies it to the equations, and then solves the equations." Dr. Herman assumed Jose G.'s truck and the Nissan had collided in a "sideswipe" or "rear-ender" on Highway 24; however, he did not think it was possible to determine which vehicle had been "the aggressor."

In an amended information, defendant was charged with one count of felony driving under the influence of alcohol causing injury (Veh. Code, § 23153, subd. (a)) and one count of felony driving with a 0.08 percent blood-alcohol content causing injury (*id.*, § 23153, subd. (b)). As to each count, it was alleged defendant personally inflicted great bodily injury. (Pen. Code, § 12022.7, subd. (a).)

A jury found defendant guilty as charged.

4

## II. DISCUSSION

### A. *Section 17(b) Motion to Reduce the Felony Convictions to Misdemeanors*

Defendant contends section 17(b) and the federal due process clause require a conditional reversal of the judgment and a remand to the trial court for a new sentencing hearing because the court erroneously believed it did not have the discretion to reduce defendant's felony convictions to misdemeanors. We disagree because the record does not support her claim.

#### 1. *Background*

Following the conclusion of the trial, defendant filed a sentencing memorandum seeking to have her felony convictions reduced to misdemeanors under section 17(b). The memorandum emphasized defendant was 30 years old with no prior criminal history, had completely abstained from alcohol since the accident, and had regularly attended Alcoholics Anonymous meetings. Although defendant's father was an alcoholic, and she had witnessed many alcohol-induced arguments between her parents, she managed to graduate from high school, maintained steady employment, and was a devoted mother to her three-year-old child. Her friends and coworkers believed she had a good character. Lastly, the memorandum noted defendant was "exceptionally remorseful."

At the sentencing hearing, the prosecutor responded to defendant's sentencing memorandum seeking a section 17(b) reduction of her felonies to misdemeanors. Even though a first-time violation of Vehicle Code section 23153 is a "wobbler" offense, punishable as a felony or misdemeanor (Veh. Code, § 23554; Pen. Code, § 17, subd. (a)), the prosecutor, nonetheless, argued the court did not have "jurisdiction" to reduce the two felony convictions to misdemeanors under section 17(b). Because the jury found the great bodily injury enhancements were true, the prosecutor maintained that

5

defendant's crimes were "serious and violent felon[ies]," not subject to reduction to misdemeanors.

Contrary to the prosecutor's assertion, defense counsel insisted there was case law holding that a finding of great bodily injury does not, pursuant to section 17(b), preclude a court from reducing a felony conviction to a misdemeanor. However, counsel told the court she had left the case law in her office on the printer.

The court responded, "Well, I want to tell you right now that was not—that is not one of the things I was thinking about in terms of a disposition for this case." Defense counsel stated, "Understood."

The court then sentenced defendant to five years of probation, on condition she serve one year in the county jail.

### 2. *Applicable Legal Principles*

"A 'wobbler' is an offense that, in the trial court's discretion, may be punished as either a felony or a misdemeanor." (*People v. Lee* (2017) 16 Cal.App.5th 861, 866 (*Lee*), citing § 17(b); *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974 (*Alvarez*).) Indeed, when the statutory definition of a crime makes it a wobbler, a related enhancement that requires the defendant's imprisonment does not necessarily "fix" the crime as a straight felony for purposes of Penal Code section 17. (*Lee*, at p. 872.)

In *Alvarez*, our Supreme Court examined the extent of the trial court's discretion to reduce a wobbler to a misdemeanor. "[S]ection 17(b), read in conjunction with the relevant charging statute, rests the decision whether to reduce a wobbler solely 'in the discretion of the court.' By its terms, the statute sets a broad generic standard. [Citation.] The governing canons are well established: 'This discretion . . . is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to

6

be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' [Citation.] 'Obviously the term is a broad and elastic one [citation] which we have equated with "the sound judgment of the court, to be exercised according to the rules of law." [Citation.]' [Citation.] Thus '[t]he courts have never ascribed to judicial discretion a potential without restraint.' [Citation.] 'Discretion is compatible only with decisions "controlled by sound principles of law, . . . free from partiality, not swayed by sympathy or warped by prejudice . . . .' [Citation.]' [Citation.] '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*Alvarez, supra*, 14 Cal.4th at p. 977.)

On appeal, the *Alvarez* court noted, " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*Alvarez, supra*, 14 Cal.4th at pp. 977–978.)

### 3. *Analysis*

Here, our review of the record leads us to conclude that the trial court understood it had the discretion to reduce defendant's felony convictions to misdemeanors but chose not to do so. The court plainly considered the available options as evinced by its response to defense counsel's request for a

7

reduction—"that is not one of the things I was *thinking* about in terms of a disposition for this case." (Italics added.) Moreover, it was the prosecutor, not the court, who argued the court lacked jurisdiction to reduce the felonies to misdemeanors, after which defense counsel stated she had authority she could provide to the court showing it had such discretion.[1]

We do not presume the trial court was unaware of its discretion to reduce the felony convictions to misdemeanors when (1) the law so provides, (2) the court never said it believed it lacked discretion, and (3) defense counsel offered to provide authority showing the court had such discretion. The clear implication of the court's statement is that it was not considering a reduction of the felony crimes to misdemeanors, even assuming it had the authority. (*See People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 [remand not required if record shows trial court would not have exercised its discretion even if it believed it could do so]; *Lee, supra*, 16 Cal.App.5th at pp. 866–867 [error will not be presumed absent affirmative showing trial court misunderstood its sentencing discretion]; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228–1229 [remand is unnecessary if record is silent concerning whether trial court misunderstood its sentencing discretion; error is not presumed from a silent record; and court is presumed to have been aware of and followed the law].) And notably, rather than seeking clarification of the trial court's understanding of its discretionary authority, defense counsel merely responded, "Understood."

We also find defendant's reliance on *People v. Almanza* (2018) 24 Cal.App.5th 1104, 1110–1111, misplaced because in that case, there was a retroactive change in the law (Pen. Code, § 12022.53, subd. (h)), providing the

---

[1] Defendant incorrectly asserted in her opening brief that *the court* stated it did not have the discretion to reduce the felonies to misdemeanors.

8

trial court with discretion to strike or dismiss a firearm enhancement that it lacked at the initial sentencing. In contrast, here, at the time of sentencing, section 17(b) provided the court with the discretion to reduce wobblers from felonies to misdemeanors.

In short, under the facts of this case, we cannot conclude the trial court failed to understand its discretionary authority to reduce the convictions.

## B. Juror Misconduct

Defendant contends her convictions must be reversed because the trial court failed to investigate defense allegations that one of the seated jurors had slept during portions of the trial. We reject defendant's contention.

### 1. Background

After the court and counsel finished settling the jury instructions, defense counsel, for the first time, raised an issue regarding Juror No. 6, stating, "I have a concern that juror number 6 has been asleep during substantial portions of the testimony, at least this morning. I did see her dosing [*sic*] off yesterday as well, but I saw it more pronounced today. I'm not sure—." The court responded, "It is hard to stay awake through a DUI." Defense counsel said she understood the court's comment, but her concern was "that [Juror No. 6] is not necessarily listening and hearing all of the testimony and taking in this case in a way that would allow her to fairly evaluate the facts and determine my client's guilt." The court offered to speak "directly" to Juror No. 6 while the whole jury was present, and "say, you know, that it's been noted by my staff that you are sometimes—it looks like you're sleeping. I need you to be awake. I need you to be paying attention. Can I give her that lecture in front of everybody?" Defense counsel expressed concern that lecturing the juror in front of the other jurors would make the juror "more reluctant to admit that maybe she has been sleeping."

9

The court responded this juror was "not going to be [*sic*] admit it. None of them have ever admitted it. They always say, I was listening, but I had my eyes closed." Though the prosecutor agreed with the court, defense counsel continued, "I think this is a serious case and to have a juror that potentially was not listening during a portion or was actively or passively asleep is a big problem." The court replied, "Right. Okay. I think we're done."

The following day, at the beginning of the court session, the trial court spoke to the jurors telling them, "First of all, I want to mention that it's very important that you all keep your eyes open, pay attention and not fall asleep. During the course of the trial, I think a few people did that, and I have to assure the record and myself that you are actually listening and paying attention. [¶] I mentioned it because this, too, right now, I'm about to read to you jury instructions, and they could make you go to sleep. But I'm going to be reading these to you, so I don't want you to take any notes. You're going to have this book back in the deliberation room with you. So, just follow on with what I'm saying."

Once the jurors retired to deliberate, however, defense counsel asked to put on the record "one thing," that is she "noticed again, Juror Number 6 seeming to drift off throughout the closing of both [the prosecutor] and myself, so that's troublesome to me, and I—." The court asked her if she wished the court to substitute in an alternate. Defense counsel responded, "I don't think that that would be inappropriate in this case. I think that if we have a juror that's been asleep during a substantial portion of the testimony and/or counsel's arguments, that that's a problem." When the court asked the prosecutor for her opinion, she commented, "I was looking at [Juror No. 6] because of what we discussed yesterday. I saw there were times, very short times she had her eyes closed. I didn't interrupt [*sic*] anything as sleeping.

She didn't look super engaged, but that's no change of facts. I did not notice her fall asleep." The court agreed with the prosecutor, stating, "I can't say that I did either. So, with the record the way it is, I'm going to leave it. I'm going to let her stay."

### 2. *Applicable Legal Principles*

Penal Code section 1089 provides in part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, the court may order the juror to be discharged . . . ." (Pen. Code, § 1089, 5th par.) "[A] juror's serious and wilful misconduct is good cause to believe that the juror will not be able to perform his or her duty." (*People v. Daniels* (1991) 52 Cal.3d 815, 864.)

"The trial court's decision whether or not to discharge a juror under [Penal Code] section 1089 is reviewed for abuse of discretion and will be upheld if supported by substantial evidence; to warrant discharge, the juror's bias or other disability must appear in the record as a demonstrable reality." (*People v. Holloway* (2004) 33 Cal.4th 96, 124–125.) In reviewing the trial court's decision, we are mindful that the trial court is in the best position to observe the juror's demeanor. (See *People v. Beeler* (1995) 9 Cal.4th 953, 989, abrogated on another ground as recognized in *People v. Edwards* (2013) 57 Cal.4th 658, 705.)

A trial judge "must conduct a sufficient inquiry to determine facts alleged as juror misconduct 'whenever the court is put on notice that good cause to discharge a juror may exist.'" (*People v. Davis* (1995) 10 Cal.4th 463, 547; *People v. Bradford* (1997) 15 Cal.4th 1229, 1348 (*Bradford*).) In order to justify investigation, there must be more than mere speculation of juror misconduct. The juror's inability to perform must appear as a

11

" ' "demonstrable reality." ' " (*People v. Williams* (1997) 16 Cal.4th 153, 231.) Both the decision to investigate and the decision as to whether there was misconduct justifying discharge rest in the trial court's sound discretion. (*Bradford*, at p. 1348.)

### 3. Analysis

We reject defendant's contention that the court abused its discretion by failing to hold a hearing to inquire further into the allegation that Juror No. 6 was sleeping during the testimony.

The issue of a dozing juror was specifically addressed in *Bradford, supra,* 15 Cal.4th 1229. In *Bradford*, our Supreme Court found that the trial court did not abuse its discretion by failing to conduct an inquiry into a juror's fitness despite the fact the trial court had observed the juror sleeping at one point during the trial, and was aware the juror had slept all day on the previous day. (*Id*. at pp. 1347–1348.) *Bradford* set a high threshold for overturning a verdict based on the failure to adequately investigate a juror's inattentiveness: "We have observed that '[a]lthough implicitly recognizing that juror inattentiveness may constitute misconduct, courts have exhibited an understandable reluctance to overturn jury verdicts on the ground of inattentiveness during trial. In fact, not a single case has been brought to our attention which granted a new trial on that ground. Many of the reported cases involve contradicted allegations that one or more jurors slept through part of the trial. Perhaps recognizing the soporific effect of many trials when viewed from a layman's perspective, these cases uniformly decline to order a new trial in the absence of convincing proof that the jurors were actually asleep during material portions of the trial.' " (*Id*. at p. 1349.)

The circumstances in the instant matter fail to meet the high threshold set out in *Bradford*. There, the Supreme Court found no abuse of discretion

where the trial court failed to conduct any inquiry, despite evidence that a challenged juror had slept for a substantial portion of at least two trial days. Here, the only evidence that Juror No. 6 had been sleeping was defense counsel's assertion that the juror had been sleeping "during a substantial portion of the testimony," which was contradicted by the judge and prosecutor who were also in a position to observe the juror. While the court agreed with the prosecutor's observation that Juror No. 6 had her eyes closed for very short times, neither the court nor the prosecutor saw her fall asleep. Thus, the only evidence of Juror No. 6 sleeping was defense counsel's representation. which included statements such as counsel was "not sure" and the juror "*potentially* was not listening during a portion or was actively or passively asleep." (Italics added; see *People v. Espinoza* (1992) 3 Cal.4th 806, 821 [speculation by counsel that juror was sleeping falls short of good cause requiring the court to conduct further inquiry]; *People v. Bowers* (2001) 87 Cal.App.4th 722, 731 ["A juror must not be discharged for sleeping unless there is convincing proof the juror actually slept during trial."].)

Nor does defendant demonstrate exactly when and for how long Juror No. 6 was sleeping. Indeed, it seems defendant's argument that "There is simply no record how much of the trial Juror Number 6 failed to hear" is precisely the problem. (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 411 [noting cases uniformly decline to order new trial in absence of convincing proof jurors were actually asleep during material portions of trial]; *People v. Jablonski* (2006) 37 Cal.4th 774, 807 [inability of juror to perform his or her duties must be shown to be a " ' "demonstrable reality" ' "].)

In sum, given the absence of evidence that Juror No. 6 was asleep for material portions of the trial and the trial court's reliance on its own observations and the observations of the prosecutor, defendant has failed to

show the trial court abused its discretion in failing to conduct a further investigation.

## III.  DISPOSITION

Accordingly, the judgment is affirmed.

MARGULIES, ACTING P. J.

WE CONCUR:


BANKE, J.


SANCHEZ, J.


A157824
*People v. Villarreal-Guzman*

15