Filed 10/2/23  P. v. Grant CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B324601 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA093193; |
| v. | Appellate Division of the Super. Ct. No. BR055463) |
| EMERALD YVONNE GRANT, |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County.  Alan K. Schneider, Judge.  Affirmed.

David W. Scopp, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Emerald Yvonne Grant appeals the judgment entered following a jury trial in which she was convicted of simple battery (Pen. Code,[1] § 242, subd. (a)), as a lesser included offense of battery with serious bodily injury (§ 243, subd. (d)).  The trial court suspended imposition of sentence and placed appellant on probation for one year with the conditions that she perform 20 days of community labor, complete 52 anger management classes, and pay victim restitution.

Appellant contends the trial court abused its discretion and violated her Sixth and Fourteenth Amendment rights by failing to adequately investigate appellant's allegation that a juror was sleeping during portions of the trial and determine whether the juror was biased against her as a result of the allegation.  We disagree and affirm.

## FACTUAL BACKGROUND

On February 21, 2020, in stop-and-go traffic on the 405 freeway, appellant rear-ended the car in front of her in which Angelina Gomez DeJesus was a passenger.  Following an altercation over the exchange of insurance information between the drivers, appellant returned to her car, got in, and closed the driver's side window.  DeJesus followed appellant and "slapped" appellant's vehicle to get appellant's attention and stop her from leaving.  DeJesus then walked around to the passenger side of appellant's car and told her, "I've got your license number."  As DeJesus was walking back to her vehicle, appellant "came from behind," grabbed DeJesus by her clothing, and threw her to the ground.  DeJesus went to the emergency room a couple hours

---

[1] Undesignated statutory references are to the Penal Code.

after the incident with a fracture to her left elbow, which required surgery.

Appellant did not testify or present any evidence. But defense counsel argued that inconsistencies in the prosecution's case as to how events unfolded and problems with DeJesus's credibility created a reasonable doubt as to whether appellant's conduct caused the fracture to DeJesus's elbow.

## DISCUSSION

**The Trial Court Did Not Abuse Its Discretion in Investigating Appellant's Allegation that a Juror Was Sleeping During Portions of the Trial and Appellant's Claim that the Juror Was Biased Against Appellant as a Result of Making the Allegation**

1. *Relevant background*

At some point during trial, appellant partially stood up in her seat and spoke to the bailiff.[2] The trial court did not hear what appellant said, and there was no indication any of the jurors heard anything.

Outside the presence of the jury after the prosecution rested its case, the trial court noted that it had come to its attention that one of the jurors had "periodically closed her eyes during the reading of instructions and the testimony." The court stated, "I watched her, and it does not appear to the court that she had been sleeping. She has had some issues that she is dealing with. She appears to be in discomfort." Nevertheless, the court said it would "bring her in to make sure that she has not

---

[2] This incident is not recorded in the reporter's transcript. Accordingly, our account is based on the trial court's discussion of the incident with defense counsel in the context of appellant's motion for a mistrial.

3

slept." The bailiff added that Juror No. 2 had brought the matter to his attention and explained that "[t]he reason why she was closing her eyes is that she has a sunburn on her back, and it's uncomfortable for her so she tends to close her eyes."

Juror No. 2 entered the courtroom and the trial court conducted voir dire in the presence of counsel:

"The Court: . . . [¶] . . . I noticed during the—some of the instructions and some of the testimony that you had sort of closed your eyes a little bit, and I just want to make sure that, first of all, everything was okay."

The juror responded that she had gone camping the previous weekend and had gotten a sunburn on her back.

"The Court: So were you sleeping or closing your eyes?

"Juror: No. Closing my eyes because I did not put on lotion and it hurts.

"The Court: So you were awake the whole time?

"Juror: Yes, I was awake.

"The Court: That's what I saw too. I noticed you closing your eyes, and I didn't say anything because it appear[ed] that you were in discomfort and not sleeping."

After the juror left the courtroom, the trial court declared: "I'm satisfied with her explanation. I looked over several different times, and every time I looked over her eyes would open back up, but it appeared that she was in discomfort."

Defense counsel did not seek to ask the juror any questions about closing her eyes or appearing to sleep during trial. Neither did defense counsel object to the scope of the court's inquiry nor ask the court to take any further action after it questioned Juror No. 2.

The next day defense counsel moved for a mistrial on the ground that appellant's allegation "in open court" that "a juror had been sleeping with her eyes closed," might have biased the juror against appellant so that the juror would have "problems applying the burden of proof to the presumption of innocence based upon what [the juror] could have heard." The trial court responded that it did not hear what appellant had said, and it did not appear that the juror heard anything either. The court added: "I would not like to bring it to the juror's attention. If you would like I could bring it to the juror's attention and ask her, but that would then bring it to her attention." Defense counsel agreed, and the court confirmed, "So you don't want me to do that?" Defense counsel confirmed that she did not want the court to question the juror about whether she heard appellant's allegation: "Yes. That's correct."

The court denied the motion for a mistrial on the ground that appellant had not demonstrated any prejudice.

At sentencing, appellant made an allocution, insisting that the juror had been sleeping during the trial. The court reiterated its finding that Juror No. 2 did not sleep during the trial. The court explained: "I watched that person very closely. I watched her throughout, and she was not sleeping. She said she did have a headache,[3] and she was closing her eyes because she was in pain. [¶] But I was very cognizant of her and watched, and she did not sleep."

---

[3] Juror No. 2 had stated she had a sunburn, not a headache, and was in pain.

5

2. *Legal principles*

Section 1089 permits a trial court to discharge a sitting juror " 'if, upon good cause, the juror is "found to be unable to perform his or her duty." ' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 262.) Our Supreme Court has held that " ' " '[o]nce a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty "to make whatever inquiry is reasonably necessary" to determine whether the juror should be discharged.' " ' " (*People v. Cowan* (2010) 50 Cal.4th 401, 505–506.) The trial court's "inquiry may consist of a full hearing or informal questioning of the juror in the presence of counsel. [Citation.] 'The specific procedures to follow in investigating an allegation of juror misconduct are generally a matter for the trial court's discretion.' " (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1170 (*Johnsen*).) Indeed, " '[b]oth the scope of any investigation and the ultimate decision whether to discharge a given juror are committed to the sound discretion of the trial court.' " (*People v. Williams* (2015) 61 Cal.4th 1244, 1277 (*Williams*).) A full hearing is required only if " ' " ' "the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties." ' " ' " (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 27, quoting *Cowan*, at p. 506.)

Good cause to remove a juror exists when the juror is sleeping during trial (*Williams, supra,* 61 Cal.4th at p. 1277; *People v. Thompson* (2010) 49 Cal.4th 79, 137; *People v. Bonilla* (2007) 41 Cal.4th 313, 350), but not when there is a "mere suggestion of juror 'inattention' " (*People v. Espinoza* (1992) 3 Cal.4th 806, 821; *People v. Williams* (2013) 58 Cal.4th 197, 289). At the conclusion of its inquiry, a trial court may discharge a

seated juror only if the juror's unfitness to serve appears " 'in the record as a demonstrable reality.' " (*People v. Armstrong* (2016) 1 Cal.5th 432, 450; *People v. Martinez* (2010) 47 Cal.4th 911, 943 (*Martinez*).)  On appeal, in assessing whether the trial court abused its discretion on the question of juror misconduct, " ' "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*People v. Linton* (2013) 56 Cal.4th 1146, 1194 (*Linton*).)

    3. *The trial court did not abuse its discretion*

Appellant contends that the trial court's brief inquiry was inadequate to determine whether Juror No. 2 had been sleeping during crucial portions of the trial or whether the juror could be impartial as a result of appellant's allegation that she had been sleeping.  We disagree.

Even before the bailiff reported that the juror had said she closed her eyes because of an uncomfortable sunburn, and before the trial court conducted voir dire, the court observed:  "I watched her, and it does not appear to the court that she had been sleeping. . . . She appears to be in discomfort."  In the presence of counsel, the trial court asked Juror No. 2 directly if she had been sleeping during the trial.  Juror No. 2 answered that she had closed her eyes, but was awake the whole time, and did not sleep. The court noted that the juror's statement confirmed its own observations that she was not sleeping but was in pain.  After Juror No. 2 left the courtroom, the trial court declared:  "I'm satisfied with her explanation.  I looked over several different times, and every time I looked over her eyes would open back up, but it appeared that she was in discomfort."

The trial court adequately investigated possible misconduct by Juror No. 2. That inquiry—consisting of direct questions to the juror and the court's own observations of the juror's demeanor during trial—was all that was reasonably necessary to determine if Juror No. 2 was sleeping and should be discharged. We defer to the trial court's credibility call. (*Linton, supra,* 56 Cal.4th at p. 1194; see *Johnsen, supra,* 10 Cal.5th at p. 1170 ["On this record, we have no basis to second-guess the trial court's credibility determination"].) When it comes to a sleeping juror, the basis for a "demonstrable reality" of unfitness exists only when "there is convincing proof the juror actually slept during trial." (*People v. Bowers* (2001) 87 Cal.App.4th 722, 731.) That standard was not met in this case. The trial court satisfied its duty to investigate, and did not abuse its discretion in concluding that no good cause existed to dismiss the juror. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 418 [rejecting claim of inadequate inquiry into allegation that a juror had been sleeping on the ground that trial court had "conducted an inquiry into [juror's] attentiveness and satisfied itself and counsel that he was alert. Nothing more was required"]; *Martinez, supra,* 47 Cal.4th at p. 943 [in the absence of showing that juror was unable to fulfill functions as a juror, no prejudice in trial court's decision not to investigate further].)

Appellant further asserts that the court failed to adequately investigate whether Juror No. 2 was biased against appellant because of appellant's allegation that the juror had been sleeping during trial. But defense counsel expressly declined the court's offer to question the juror on the issue, and there is no indication in the record that the juror even heard appellant's comment. Indeed, appellant fails to present any

evidence to support her speculative claim that Juror No. 2 was biased.  We will not presume bias, and on this record, in the absence of any suggestion of juror bias as a demonstrable reality, we do not question the trial court's decision not to further investigate appellant's claim.  (See *Martinez, supra,* 47 Cal.4th at p. 943.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


KWAN, J.*

We concur:



CHAVEZ, Acting P. J.



HOFFSTADT, J.

---

**\*** Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.